## BOWERS v. SEAS SHIPPING CO., Inc.
### No. 6143.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 9, 1950.

Decided Nov. 15, 1950.

Eugene A. Alexander, III, Baltimore, Md. (David Friedman, Baltimore, Md., on the brief), for appellant.

Robert E. Coughlan, Jr., and George W. P. Whip, Baltimore, Md. (Lord, Whip & Coughlan, Baltimore, Md., on the brief), for appellee.

Before SOPER and DOBIE, Circuit Judges.

PER CURIAM.

This is a libel in admiralty seeking to recover damages for injuries alleged to have been received by libellant as the result of respondent's negligence, and to secure maintenance, care and cure. The District Court, dismissed the libel and libellant appealed to us.

Libellant was junior engineer on the S. S. Robin Sherwood. When this ship was on the high seas, libellant, on November 18, 1948, was ordered to look for some missing tools. He started a search over the ship and in the course of his search, climbed up on a desk or work bench, situated in a work shop, to look into some shelves that were against the wall above the desk or work bench. After looking into the shelves against the wall for the missing tools he started to get down off the desk or work bench, caught his left foot in an open drawer in the desk or work bench and lost his balance. He attempted to regain his balance, and jerked himself around in a position which left his right leg up on the bench, and his back and tail bone and elbow and the back of his head struck on the floor plates. His right leg, still on the work bench, was twisted around the vise and the little metal band, which was around the edges of the work table.

Libellant did not think it was a serious accident and asked for some mercurochrome, which was given to him. He continued his work until the end of the day, which was five o'clock, and at five-thirty he had his supper. Shortly thereafter, while reading, he felt an unusual thing on his elbow, and after looking up his sleeve noticed a large swelling. He thought that he had better make out an accident report so he told the purser and showed him the swelling, bruises, and brush burns. The purser told him to make out an accident report, which he did. Thereafter, he continued his regular duties throughout the voyage.

He continued to New York, and after being paid off, met the insurance man, who asked him if he would like to make a statement as to what happened, which he did. This man told him that the Marine Hospital was open to him any time he wanted to go, to which libellant replied that he knew he could so do. At that time he told the insurance man that his left elbow and lower spine were bothering him some but he did not make a complaint at that time about his knee because it did not bother him. In the statement given aboard the vessel, libellant said, among other things, that he had a brush burn on the back of his right knee. Libellant went from New York to Greensboro, Pennsylvania, which was his home town. His condition did not change much while he was at home but towards the end of December, while dragging out a couple of bales of hay on his brother's farm, his right knee gave way and he decided to go to a hospital.

He arrived in Baltimore on January 7, 1949, and stopped at a rooming house. While going down several steps to the bathroom, his right knee again gave way, which caused him to fall with his right ankle under his body. The ankle immediately began to swell. He thought he had sprained his ankle and treated it by bathing it in hot water and salt, and later when he saw that it was not responding to that

354

treatment, he decided to report to the hospital, where an X-Ray was taken.

The X-Ray revealed a fracture of his right ankle, and he remained at the Marine Hospital in Baltimore, as an in-patient until February 9, 1949. Thereafter, he became an out-patient and reported to the hospital periodically. He was later examined by Dr. H. Alvan Jones, who recommended physical therapy treatment. After communicating this information to the Marine Hospital, he was given eighteen physical therapy treatments, which helped him very much, and he was discharged on July 28, 1949, as having reached his maximum improvement.

 The District Judge, in his opinion, stated:

"But when, as here, something has happened to a person apparently so minor in character that he himself did not feel the necessity of having it looked into, and when we are asked to assume that this minor injury must now be taken, in retrospect, as the proximate cause of an entirely different and quite serious injury to another part of his body occurring nearly two months later, such assumption is not reasonable unless supported by the weight of the credible evidence, and I find a very definite lack of sufficient evidence to indicate that this minor accident, treated by the libellant himself as very minor, was a proximate cause of his serious knee injury.

"The testimony indicates that there was a possibility,—but it is speculation—that the knee trouble which gave the libellant concern was due to something that happened while libellant was working on a farm in Pennsylvania. In any event, there is a complete lack of convincing proof that the fall which he later had in a hotel in Baltimore when he injured his ankle, was caused by the injury to the knee, whereever that injury may have occurred whether on the ship or the farm, or both.

"As respects maintenance, I likewise find that libellant is entitled to recover nothing because of his failure to act with reasonable diligence and to go to a hospital to find out what was really the matter with him."

See, The Saguache, 2 Cir., 112 F.2d 482; Marshall v. International Mercantile Marine Co., 2 Cir., 39 F.2d 551; Armit v. Loveland, D.C., 38 F.Supp. 432, 434.

A careful study of the record convinces us that we must affirm these findings of the court below. In reaching this conclusion, we have particularly considered the testimony of Dr. Jones, upon which libellant has strongly relied.

The decree of the District Court is affirmed.

Affirmed.