REPSHOLDT v. UNITED STATES
(two cases).

Nos. 10861, 10862.

United States Court of Appeals
Seventh Circuit.

July 17, 1953.

As Amended on Denial of Rehearing
Sept. 8, 1953.

Robert F. Doyle and Marion Hannigan, Chicago, Ill., for Repsholdt.

Stuart B. Bradley, Chicago, Ill., Tom L. Yates, Otto Kerner, Jr., U. S. Atty., Chicago, Ill., Seago, Pipin, Bradley & Vetter, Chicago, Ill., for the United States.

Before FINNEGAN, LINDLEY and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

This is a libel in person and in admiralty, wherein libelant seeks to recover damages under the Suits in Admiralty Act, 46 U.S.C.A. § 742, for injuries alleged to have been received by him aboard ship as a result of respondent's negligence and, in addition, to have allowed him wages, maintenance and care as provided in the Jones Act, 46 U.S.C.A. § 688.

In count one of his libel he alleges "That on or about March 6, 1948 * * *, while a storm was in progress, libelant, in the performance of his duties, proceeded to secure the gear which was under his supervision, while going to the galley to secure the gear therein as aforesaid, libelant was forced to and did walk through water that had accumulated in libelant's quarters and in the passageway between libelant's quarters and the galley, and in so doing libelant's shoes and trousers became wet. While going up the stairs leading to the galley, libelant, by reason of his wet apparel and the wet galley steps, slipped and fell on the galley steps, causing an injury to his legs and knees; libelant pulled himself up and proceeded to the galley where he again slipped and fell because of the wet condition of his wearing apparel and the galley floor, again injuring his legs and knees."

He charges respondent with negligence in: (1) allowing hatches and portholes to remain open; (2) failing to notify him in advance that the vessel was heading into a storm; (3) failing to provide adequate intercommunication facilities aboard ship to notify him that a storm was coming up; (4) failing to maintain and provide a seaworthy vessel in that it did not contain adequate forecasting equipment and adequate radio facilities to foretell weather conditions and notify him of an approaching storm; (5) failing to maintain adequate medical personnel and equipment to care for his injury; (6) failing to maintain a seaworthy vessel; (7) failing to provide a seaworthy vessel in that the quarters provided libelant did not contain adequate and proper drainage facilities; and (8) failing to maintain and provide a seaworthy vessel in that the drainage facilities provided in libelant's quarters were not properly maintained so as to allow water to drain off the floor of libelant's quarters.

On March 4, 1953, the trial court entered a decree wherein it awarded the sum of One Thousand Dollars damages for injury, pain and suffering, loss of earnings and all other items of loss or expenses recoverable under the Jones Act, and the sum of Six Hundred Dollars for maintenance and cure under maritime law. Libelant appeals from that decree and respondent cross-appeals. Libelant insists that he is entitled to $135,360 and respondent says he did not fall on the vessel and injure himself and that he is entitled to no recovery.

Libelant, a seaman, off and on, since 1912, was the chief cook on T. 2 Tanker Fort Stephenson, being employed in such capacity in February 1948. In that year, while he was a member of the crew, the ship made a coastwise voyage, from Port Amboy, New York, to Port Arthur, Texas, and return to Providence, Rhode Island. The day before reaching port at Providence, the alleged injury, about which he complains, occurred. He occupied an outside two-bunk cabin by himself. It was about six by nine feet in dimensions, and had a porthole equipped with a heavy glass cover about 2½ inches in thickness. The porthole cover could be opened or closed and fastened with clamps to keep out sea water in rough weather. About eight o'clock on the evening of March 4th, 1948, there was a rough northeasterly sea with heavy swells. The sea water was shipping over the main deck of the ship fore and aft. By midnight the sea had moderated somewhat, but there was still rather a heavy northeasterly sea and swells.

About eleven o'clock that night, libelant was in the messroom having coffee and watching a card game. He then visited with the night cook in the latter's quarters for about a half hour, where he was told that

his cabin deck was flooded. He then went to his cabin and found the floor covered with about six inches of water. Aided by a fellow crew member, named Sloane, he picked up his gear.

The porthole cover was open, according to Sloane's evidence and it was unfastened, according to that of the libelant, thus allowing sea water to enter the cabin.

Libelant testified that while picking up his gear he fell forward on his right knee in his cabin; that he sat on his bunk and then went to bed; that he got up later to go to the galley and while on his way to the galley he fell on the same knee on the stairway in the companionway. He said his knee caused him pain. "I imagine I hurt myself a little. I slipped there in the water, my shoes were wet."

He further stated that he reported the injury to the master of the ship and also to the first mate the next morning. These officers said no such injury was reported by libelant; that he was a member of the crew and served aboard ship until the end of the voyage on March 6, 1948; that they saw him, the day following the alleged falls, walk through the payoff line and his appearance and manner of walking were the same as at all previous times during the voyage, although at the trial, libelant testified that his knee was swollen to ten inches in diameter.

When he left the ship at Providence, Rhode Island, he took a train to New York where he stayed over night and he then went by train to his home at Oshkosh, Wisconsin.

He did not ask for a hospital ticket before leaving the ship, nor did he seek any medical attention at Providence, New York, Chicago or Milwaukee in train stop-overs at those places, although marine hospital service was available to him in all those cities, which libelant admitted he knew. He said he telephoned to the Marine Hospital Clinic in New York, on Sunday, but no one answered. He knew that hospital was open twenty-four hours every day.

Libelant remained in Oshkosh from March 8 to April 19, 1948.

Libelant further testified that on April 19, 1948, his knee gave way while he was descending the back steps of his home in Oshkosh. He was then taken to Veterans Administration Hospital, at Wood, Wisconsin. At that time he was not employed by respondent.

In February, 1951, long after his service on the Fort Stephenson, libelant slipped and fell on an icy sidewalk while employed as a civil service janitor at the Veterans Administration Hospital, at Wood, Wisconsin, injuring his knee. He made application for compensation for an accidental injury and has been receiving United States Employees Compensation in the sum of $119 per month since that accident.

The District Court found that: "the evidence is insufficient to show any causal connection between the fall and injury which occurred aboard the tanker, Fort Stephenson, and the fall which occurred on April 19, 1948, or the fall which occurred in February, 1951."

We think the record warrants that finding. We shall, therefore, confine our discussion to the claimed injury on the ship in March of 1948, and the question of maintenance and cure.

When libelant entered his cabin knowing of the water on the floor, he said he fell forward and landed on his right knee, and while bailing out the water, he fell again. He also testified that between the first and second falls he started to the galley, slipped on the steps "and I bruised my knee the third time—the second time." It developed that on discovery examination, he had testified that he fell on his right knee three times going up the steps and on the right knee twice in his cabin. The version of this incident which libelant told to the Veterans Administration Hospital, in giving the history of his injury, after he fell on April 19, 1948, was that he was "on a tanker, the front of which blew up," that he ran up on deck, slipped twice, injuring his right knee. At the trial he admitted this was not true. He said there was no explosion on the ship.

As we read the record, libelant's story was very vague and contradictory in many respects, as the trial court found.

Respondent claims libelant did not fall aboard ship and injure his knee, and stresses the issue of his veracity. Respondent made a serious attack on libelant's credibility, forcing him to admit ultimately that he had given false information to the Veterans Administration Hospital, at Wood, Wisconsin, and to his own doctor on April 19, 1948, that in fact no explosion occurred on the ship, causing him to fall on his knee, and in other respects there are discrepancies in his evidence. The trial judge found in his findings that:

"Libelant's testimony is vague and contradictory in many respects; the preponderance of the evidence shows that the libelant did sustain an injury while aboard the Fort Stephenson, but that the injury was of a minor and temporary nature and was not of a permanently disabling nature."

With respect to libelant's claims (1) that there were no scuppers in the cabin which he occupied; (2) that the portholes did not have deadlights on the inside of the porthole covers; and, (3) that he was not warned that the weather was rough and stormy, we are convinced that these claims have no relevancy to the question of the proximate cause of his injury on board the tanker.

In its conclusions of law, the District Court said:

"Scuppers or drains in a cabin of a vessel which is occupied as sleeping quarters by the crew are required by law. (46 U.S.C.A. sec. 660-1)"

"The absence of a deadlight on the inside of the glass porthole cover is not negligence on the part of the shipowner, and was in no way related to the entry of water into libelant's quarters."

"There is no duty on the part of the officers of a vessel to inform an experienced seaman that the weather is rough or that there is a storm, such conditions being self-evident to all personnel aboard ship."

If the porthole cover had been closed and fastened, there would have been no flooding of the cabin floor, and if the cabin had not been flooded, the libelant would not have been injured as he was. The duty to close the porthole in his cabin devolved upon the libelant. The trial court properly concluded:

"It was the duty of libelant to keep the porthole in his sleeping quarters closed in rough weather. Libelant was guilty of contributory negligence in failing to close the porthole in his quarters during rough weather, thereby permitting water to enter."

Even though scuppers may be required by law on a vessel such as the Fort Stephenson, their absence was not the proximate cause of libelant's falls and injury in his cabin. In meeting the burden of proving negligence on the part of respondent, libelant must prove not only that the equipment or the absence of which he complains, was required as a part of the respondent's duty of care toward him, but that the accident which resulted in his injury was caused proximately by its absence.

Under the facts and circumstances presented by this record, we think what was said in Roberts v. United Fisheries Vessels Co., 141 F.2d 288–293, certiorari denied, 323 U.S. 753, 65 S.Ct. 81, 89 L.Ed. 603, aptly applies here. The court held that the defense of "assumption of risk" was no longer available to the employer under the Jones Act, "But where the injury or death is not the result, in whole or in part of the negligence of the employer, or his agents, the provision has no effect to change the rights or remedies of the parties, and, in the case of a seaman, he takes the same risks of his calling as he did before under admiralty law. By the Jones Act he is given a right of action for the negligence of his employer which he did not have before, but the usual risks of the calling are not shifted on to the employer if the employer is guiltless of any fault."

When it appears, as it does here, that involved are only "the obvious and well-known risks of the business" then there is an absence of negligence in law. DeZon v.

American President Lines; 318 U.S. 660–671, 63 S.Ct. 814, 87 L.Ed. 1065. Storms and heavy seas are "obvious and well known risks of the business" of all seamen.

■ The record is barren of proof of negligence on the part of respondent and there is no finding by the trial court that respondent was guilty of negligence proximately causing the injury to libelant. In Buford v. Cleveland & Buffalo Steamship Co., 7 Cir., 192 F.2d 196–198, this court said:

"Although from the early days of this nation to the present time many courts and text writers have stated unequivocally that an appeal in admiralty is a trial *de novo*, this court has recognized the well established rule that, upon such an appeal, the findings of the district court as to the facts will be accepted by this court unless clearly against the preponderance of the evidence. Koehler v. United States, 7 Cir., 187 F.2d 933, 936; Leathem Smith-Putnam Navigation Co. v. Osby, 7 Cir., 79 F.2d 280, 282. "However, it is also fundamental that, under the Jones Act, damages may only be recovered for negligence, DeZon v. American President Lines, Ltd., 318 U.S. 660, 671, 63 S.Ct. 814, 87 L.Ed. 1065; Jamison v. Encarnacion, 281 U.S. 635, 639, 50 S.Ct. 440, 74 L.Ed. 1082, and that a causal relationship must exist between the negligence and the injury. Jackson v. Pittsburgh S. S. Co., 6 Cir., 131 F.2d 668. The burden of proof was upon the libelant here to establish by evidence that the respondent was guilty of negligence proximately causing the injury complained of."

The libelant in this case failed to sustain that burden.

Under the Jones Act damages may only be recovered for negligence. Buford v. Cleveland & Buffalo Steamship Co., 7 Cir., 192 F.2d 196–198, and cases there cited. Mullen v. Fitz Simons & Connell Dredge & Dock Co., 7 Cir., 191 F.2d 82–84.

There is a complete lack of convincing proof that the injury which he claims he sustained on board ship and which he considered of a minor nature, not seeking medical aid or attention for 44 days after it occurred and treating it himself as very minor, had any causal connection with his subsequent injuries on April 19, 1948, and in February, 1951, or that it was negligence proximately chargeable to respondent.

Other errors raised have been considered and we find they lack merit.

■ It is clear to us that libelant failed to sustain his burden of proof on his claim of negligence.

Regarding his claim for maintenance and cure, the record discloses: (1) a seaman with over 35 years experience; (2) who, in his long experience had been given medical aid and attention in marine hospitals many times before; (3) who now claims a serious injury, his knee swollen to ten inches in diameter; (4) when the injury happened he considered it of a minor nature; (5) who failed to ask for a hospital ticket; (6) who went by train from Providence to New York, thence by way of Chicago and Milwaukee to Oshkosh, his home, without seeking medical aid or attention; (7) who knew he could get medical attention at any one or all of the marine hospitals in all those cities, and, though claiming injury, sought no such aid; (8) who treated himself for about 44 days after his claimed injury occurred, except he said "on either the first or second of March or April, I can't remember" he visited the United States Public Health Clinic, in Milwaukee, where he was given some pills and told to keep hot applications on his knee by Dr. Hanson, which he said he did. The doctor in charge of the United States Public Health Clinic said they had no record of any such visit by libelant during March or April, 1948, and (9) he said he did not see a doctor in Oshkosh between the time he returned from New York until April 19, 1948, when his own doctor looked at his knee and told him to put hot applications on it, and he said that was the only treatment he received. We think he failed to act with reasonable diligence, and to go to a hospital to find out what was really the matter with him, and secure proper treatment.

Under the facts and circumstances in this record, we think it was error to allow libelant $600 for maintenance and cure. See Bowers v. Seas Shipping Co., Inc., 185 F.2d 352–354.

The judgment of the District Court allowing libelant $1000 for damages and $600 for maintenance and cure is reversed.