### Petition of FELDMAN.

### THE GLORIA F.

### No. A. 19987.

United States District Court,
E. D. New York.

Nov. 23, 1953.

Klein & Ruderman, New York City (Jacob Rassner, New York City, Norman Miller, Miami, Fla., of counsel), for claimant.

Mahar & Mason, New York City (Frank C. Mason, New York City, of counsel), for petitioner.

INCH, Chief Judge.

This is a limitation proceeding by Leah Feldman seeking exoneration from liability as owner of the fishing vessel Gloria F.

The claimant, Daniel Stava, is a seaman, and he predicates his claim for personal injuries on the alleged unseaworthiness of the vessel and the alleged negligence of the owner in failing to provide him with a safe place to work. The claim also includes a demand for maintenance and cure.

It was claimant's testimony that he was employed as a cook on the Gloria F on March 26, 1952 and that while lifting a kettle of water from one side of the galley stove to the other he slipped on some oil on the floor. He testified that there had been oil there for three or four months and that he had dried it up, but that it "came right back again", and that it was caused by a leak in the pipe of the galley stove. He claimed that he went on deck to relieve the Captain "so he could eat" and mentioned the occurrence to the Captain but that he "never got any answer". He

also claimed to have mentioned the accident to the mate. He said that right after the accident he felt "a lot of pain; it was like something snapped in my back".

There was no eyewitness to the accident, but claimant offered the deposition of Ormstead, the mate, who said that on March 26, 1952 claimant told him he had slipped on the floor and hurt his back and that about a half hour later, he, Ormstead, observed oil on the galley floor which came from a leak in the oil pipe going into the stove and that the leak had existed for several weeks prior thereto. Ormstead admitted in his deposition that he did not speak to the Captain or anyone else about the accident or about the oil on the floor or the leak in the pipe. He spoke of it for the first time when he went to a lawyer's office with Stava during the winter of 1952.

The vessel returned to port on March 28th and on March 30th, 1952 claimant was admitted to the Marine Hospital at Staten Island, New York where he was an inpatient until May 16, 1952 and again from June 10, 1952 to September 3, 1952. During these periods of hospitalization he was operated on for a herniated intervertebral disc and also for varicose veins.

After observing claimant on the witness stand and considering all the other evidence adduced at the trial, it is my opinion that claimant's injury was not caused by any unseaworthy condition of the vessel or any negligence on the part of petitioner.

On May 23, 1952, approximately two months after the accident, claimant signed a written statement to the effect that while lifting a pot of water from one side of the stove to the other he slipped and felt a pain in his lower back. The statement makes no mention of oil on the floor or of any leak in the stove's fuel line, but specifically states: "I do not know what made me slip other than the pot full of water was heavy and the boat rolled a bit". The state-ment then continues: "A little later on, about 12:15 p. m., I had been on deck wearing my rubber boots and started to go down into the fo'c's'le. As I got most of the way down, I missed the last step and landed on the fo'c's'le floor on one foot. The step did not break and it was not defective nor was there anything wrong with the steps in any way." Claimant himself admitted that the first time he mentioned oil being on the galley floor was to a lawyer who went to see him at the hospital, and he could not recall the date.

A written statement made by the Captain of the vessel on June 27, 1952 likewise fails to mention the presence of oil on the galley floor, but states in part: "After we were out a few days I noticed that Daniel Stava had trouble with his back. I asked him if he wanted me to take him back to New Bedford but he said no so we finished out the trip. I do not know anything about Stava having an accident while on the Gloria F. but I could see that his back bothered him a lot and that he could not take his fish out when we got back to New Bedford."

Although claimant introduced a subsequent statement made by the master I do not consider it worthy of belief for the reason that it appears that the master was discharged by petitioner for forging a check, and the statement is replete with such expressions as "I can't honestly say", "I can't remember" and "I think, but I can't definitely say".

Moreover, petitioner's husband who was in charge of repairs to the vessel, and Fagerland, the engineer, gave testimony, supported by repair bills, to the effect that a new fuel line to the stove was installed on September 28, 1951 and that it was further improved on December 13, 1951. It was Fagerland's testimony that he made a minor adjustment of a plug in the line during February, 1952, and that thereafter there was no oil leakage from the stove.

In view of all of the above evidence I cannot find that claimant's injury was

caused by any unseaworthy condition of the vessel or any negligence on the part of petitioner.

█ It is my opinion, however, that claimant suffered an injury to his back while in petitioner's employ on the said date and that he is entitled to maintenance and cure. It is true that claimant has had a long history of back trouble and that he has undergone repeated and extensive treatment and hospitalization therefor. In fact, he has on two prior occasions settled claims for injuries to his back with other shipowners. It is equally true, however, that he was discharged from the Marine Hospital on Staten Island on November 13, 1950, more than a year and four months prior to this accident, "immediately fit for full duty". Thereafter he made three trips on the fishing vessel Victoria and was employed for almost a full year on petitioner's vessel, missing only one-half trip, up to the time of this accident. In his statement of June 27, 1952 petitioner's Captain stated that he knew "Stava had trouble with his back before he came on board the F/V Gloria F. but while with me this was the first time that his back bothered him so that he could not work." Thus I find that claimant's injury was the aggravation of a pre-existing condition for which he was entitled to maintenance and cure until the maximum cure possible was effected.

Claimant has already received maintenance and cure from May 16, 1952 to June 10, 1952, the period of 25 days between his two periods of hospitalization following the accident, at the rate of $3 per day, as provided in an agreement between the Middle Atlantic Fisheries Association and also the Massachusetts Fisheries Association and claimant's union.

Plaintiff has not received maintenance and cure from the time of his second discharge from the hospital on September 3, 1952 until his maximum cure was effected, which I find to be April 13, 1953 when he was found by the hospital doctors to be fit for duty from an orthopedic standpoint. This is a period of 222 days, so that, at the rate of $3 per day, claimant is entitled to $666 for maintenance and cure.

Findings of fact and conclusions of law are being filed herewith. Settle decree.