Nevelin W. WILSON, Libelant-
Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 115, Docket 23543.

United States Court of Appeals
Second Circuit.

Submitted Nov. 18, 1955.

Decided Jan. 6, 1956.

**278**

George J. Engelman, New York City, for libelant-appellant.

Nelson, Healy, Baillie & Burke, New York City (Allan A. Baillie, New York City, of counsel), for respondent-appellee.

Before HAND, FRANK and MEDINA, Circuit Judges.

FRANK, Circuit Judge.

The trial judge wrote no opinion but made and filed findings of fact and legal conclusions as follows: [1]

"This cause having been tried by the court the following are made Findings of Fact.

"1. Libelant, 47 years of age, was employed on January 17, 1952, as first assistant engineer aboard the S.S. Ethan A. Hitchcock.

"2. The S.S. Ethan A. Hitchcock at all times hereinafter mentioned was a Liberty ship owned and operated by the United States of America.

"3. On January 17, 1952, while at sea, the libelant agreed at the request of the master of the S.S. Ethan A. Hitchcock to repair a range or foremast light.

"4. In an attempt to ascend the ladder attached to the foremast from the deck of the foremast table, he fell to the main deck and severely injured the second, third and fourth transverse process of the lumbar vertebra, together with the sacrum.

"5. Libelant slipped and fell and sustained the injuries described as a result of 'a slight lurch' of the vessel 'causing [him] to loose [sic] [his] grip on the mast ladder.'

"6. There was no grease on the foremast table at the time of the accident to the libelant.

"7. There was sufficient space between the ladder attached to the foremast and the edge of the foremast table for the libelant to ascend the ladder safely, and the ship was in all other respects seaworthy.

"8. As a result of his injuries, libelant was transferred on January 19, 1952, to a Coast Guard launch at Baltimore and admitted to the Public Health Service Hospital in that city where he was under treatment for his injuries until February 6, 1952.

"9. Thereafter libelant was an outpatient of the hospital until March 3,

---

1. A more ample discussion would have saved us much labor.

1952, on which date he obtained employment as a night engineer on various vessels until July 21, 1952, a period of 70 working days for which he received approximately $1200.

"10. On July 21, 1952, libelant returned to sea as a second engineer and has been employed in his calling ever since.

"The following are made Conclusions of Law.

"1. The court has jurisdiction of the cause and venue has been waived by the respondent.

"2. The libel should be dismissed for failure of the libelant to sustain the burden of proof with respect to either negligence on the part of the respondent or unseaworthiness in any respect of the S. S. Ethan A. Hitchcock.

"3. Libelant was injured in the service of the S.S. Ethan A. Hitchcock but he is not entitled to maintenance and cure since March 3, 1952, was a fair and reasonable time after the voyage to effect improvement in his condition and since prior to that time he had been paid an agreed sum for maintenance and cure."

1. *As to alleged negligence and unseaworthiness*

■ The judge's findings are not "clearly erroneous," and they support his legal conclusions. Shortly after the accident, Wilson signed a statement concerning it, reading as follows: "I was going to fix a light on the foremast and when I started from the masthouse up the mastladder, the ship gave a lurch causing me to loose my grip and I fell from the masthouse [to] the deck and striking my back and head during the fall." This statement was presumably made while Wilson was experiencing great pain and maybe while under shock; his condition might therefore explain his failure to mention the presence of grease, had he assigned no other cause of the accident. But he did then give as the sole reason the ship's lurch, and it is unlikely that he would not have ascribed his fall to the presence of grease if in fact he had slipped on it. At the trial, he testified that he thus slipped; and this, together with the testimony of other witnesses, would have justified an inference that the accident was so caused. But the trial judge, who saw and heard the witnesses, had discretion to disbelieve all the testimony to that effect. We cannot revise his evaluation of the witnesses' credibility, for the "demeanor evidence" has escaped our scrutiny.

■ We think the record evidence supports the judge's finding that "there was sufficient space between the ladder attached to the foremast and the edge of the foremast table for the libelant to ascend the ladder safely." Libelant argues that the fall to the main deck resulted from the failure to rig the mast-table railing with a wire or rope run through the railing stanchions around the perimeter of the mast-table. But, so far as appears, this rigging may have been intended to be used only to protect those working on the mast-table. More important, it is so purely conjectural whether such a rigging would have prevented the fall that we cannot say the judge erred in not indulging in such a conjecture.

2. *The alleged inadequacy of the allowance for maintenance and cure*

Libelant was injured on January 17, 1952. He entered the Public Health Service Hospital in Baltimore on January 19 and remained there until February 6, 1952, when he was discharged to an out-patient status. His hospital records show that "no work indefinitely" was then recommended. He testified that he was told to report to the New Orleans or the Baltimore Hospital in five or six weeks for a discharge; that he reported to the Baltimore Hospital on March 3; and that the doctor consented to give him a discharge as an out-patient and said "try yourself out on light work." Thereafter, libelant took part-time work as a night relief engineer on ships in port. He testified that he then still had "slight pains" but that the job of relief engineer did not require "manu-

al or physical labor." He did such work for approximately 70 days, from March 3 until he secured full time employment at sea at his regular job of second assistant engineer, on July 21, 1955.[2]

The trial judge held libelant not entitled to maintenance and cure after March 3, 1952, since that date "was a fair and reasonable time after the voyage to effect improvement in his condition." Libelant had been paid an agreed sum for maintenance and cure up to March 3, and the judge therefore denied libelant's claim for maintenance and cure during any subsequent period.

■ Libelant contends he was entitled to maintenance and cure for the days, between March 3 and July 17, 1952, when he was out of work. He does not ask for maintenance and cure for the days he worked; to this he clearly is not entitled, since maintenance and cure is intended to assist seamen who are incapacitated in the course of their employment and cannot earn enough to provide themselves with proper medical care and lodging and sustenance.[3]

■ A seaman's right to maintenance and cure continues for a reasonable time after the voyage has ended; this period consists of the time necessary to effect a maximum cure, i. e., so that no further improvement in the seaman's condition is to be expected.[4] The test used by the trial judge was the time necessary "to effect improvement in his condition." This test was inadequate, and the trial judge erred in applying it. There was ample evidence to show that libelant had not fully recovered on March 3. He testified that he then still felt some pain, and that the doctors had told him to try only "light work." Also, a physician testified that libelant, with his injury, could not have resumed his regular job until six months after the accident. Therefore we think that the trial judge erred in fixing the date for the termination of libelant's right to maintenance and cure as of March 3.

■ If the maximum possible cure has not been effected, the seaman's right to maintenance and cure does not terminate merely because he has secured some employment;[5] if, for periods during convalescence, the seaman is physically capable of doing part-time work and can secure a job doing work not too different from that to which he is accustomed, he should not be deprived permanently of his right to maintenance and cure merely because he attempts to reduce the employer's liability. If, during the convalescence period, he is physically incapable of doing, or cannot obtain, even part-time work, the seaman is entitled to maintenance and cure for the days he did not work.

■ As far as we can ascertain from the present record, it would seem that, between March 3 and July 1, this libelant could not perform his usual work. For the light work he did perform on seventy of those days, he earned $1200, which exceeds the aggregate amount of maintenance and cure at $8.00 a day for the entire number of days between those dates. It has been suggested that therefore he should receive nothing on account of

2. Libelant testified that he felt fit for regular work on July 1, but that work was slack at that time and that he could not get a job until July 21.

3. See Loverich v. Warner Co., 3 Cir., 118 F.2d 690, certiorari denied 313 U.S. 577, 61 S.Ct. 1104, 85 L.Ed. 1535; Benton v. United Towing Co., D.C.Cal., 120 F. Supp. 638; Burch v. Smith, D.C.E.D. Pa., 77 F.Supp. 6; The Eastern Dawn, D.C.E.D.Pa., 25 F.2d 322; 2 Norris, The Law of Seamen (1952), p. 237.

4. Farrell v. United States, 2 Cir., 167 F.

2d 781, affirmed 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850; Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993; Koslusky v. United States, 2 Cir., 208 F.2d 957; Note, 93 L.Ed. 859.

5. Koslusky v. United States, supra; Loverich v. Warner Co., supra; Burch v. Smith, supra; The Eastern Dawn, supra; Kahyis v. Arundel Corp., D.C.Md., 3 F.Supp. 492; but see Inter Ocean S. S. Co. v. Behrendsen, 6 Cir., 128 F.2d 506.

maintenance and cure even for the days in that interval in which he was unable to engage in or could not obtain light work. We do not agree. Such a ruling would involve the unwarranted assumption that $8.00 per day would fully satisfy all his reasonable needs, and would imply that therefore he should have saved any surplus over $8.00 a day. We think his right to receive maintenance and cure was on a day-to-day basis, and that he is entitled to $8.00 for each day in which he was unable to perform or to obtain light work.

However, this does not mean that libelant is automatically entitled to maintenance and cure for the days he did not work before he was fit and able to do full-time work at sea. We think that, at least where, as here, a seaman can and does obtain part-time work sufficiently similar to his regular employment, he must show some reason why he has not secured such employment for the entire convalescence period. The right to maintenance and cure lies on the borderline between "contract" and "quasi-contract," i. e., "status." See Sperbeck v. A. L. Burbank & Co., 2 Cir., 190 F.2d 449, 452–454, and cases there cited;[6] it is sufficiently "contractual" so that the seaman has the equivalent of the so-called "duty" to mitigate damages.[7] Many courts have denied seamen maintenance and cure in analogous circumstances, i. e., where they failed to take steps to keep the cost of their maintenance and cure to a minimum. Thus, where the seaman has an opportunity to use the free marine hospitals but refuses to do so, he has no right to maintenance and cure.[8] Also a seaman loses his right to maintenance and cure where he refuses to seek medical attention and thereby retards his recovery;[9] or where he prematurely leaves the hospital against doctor's orders.[10]

Here libelant did not indicate why he worked but seventy days in the period between March 3 and July 1, 1952. He did not testify that he was then too ill to work.[11] Nor did he show that for that entire period he was unable to secure part-time employment similar to that he procured during part of that period.[12]

We have assumed that July 1 was the date when no further improvement in libelant's condition was possible, but we are not sure that assumption is correct. For that reason, and for other reasons indicated in the foregoing, we remand the case to the court below to make findings as to the following on the basis of the evidence now in the record and such other evidence as may be properly admitted at a further hearing:

(1) the date when no further improvement in libelant's condition was possible;

(2) whether, before that date, libelant used reasonable efforts to secure part-time employment as a night relief engineer, or similar work, when he was fit and able to do such work.

When the district judge has made such findings, he shall award maintenance and cure in accordance with what we have said in this opinion.

Reversed and remanded.

6. Cf. Ahlgren v. Red Star Towing & Transp. Co., 2 Cir., 214 F.2d 618, 621.

7. See Warren v. United States, D.C.Mass., 75 F.Supp. 836.

8. Calmar S.S. Corp. v. Taylor, supra, 303 U.S. at page 531, 58 S.Ct. at page 654; United States v. Loyola, 9 Cir., 161 F.2d 126; United States v. Johnson, 9 Cir., 160 F.2d 789; Marshall v. International Mercantile Marine Co., 2 Cir., 39 F.2d 551; Benton v. United Towing Co., D.C.Cal., 120 F.Supp. 638, 641; Norris, supra, § 592.

9. Repsholdt v. United States, 7 Cir., 205 F.2d 852, certiorari denied 346 U.S. 928,

74 S.Ct. 308, 98 L.Ed. 420; Bowers v. Seas Shipping Co., 4 Cir., 185 F.2d 352; Bailey v. City of New York, 2 Cir., 153 F.2d 427.

10. Stokes v. United States, 2 Cir., 144 F.2d 82; The Saguache, 2 Cir., 112 F.2d 482; Weller v. United States, D.C.Cal., 106 F.Supp. 502; Norris, supra, § 593.

11. See Bekin v. United States, D.C.E.D. N.Y., 85 F.Supp. 907; The Eastern Dawn, supra.

12. See Kahyis v. Arundel Corporation, supra, 3 F.Supp. at page 495.