**Alta C. HAYCRAFT, Libelant,**

v.

**THE Steamer JAVA SEA**

and

**American Barge Line Company, Inc., Respondents.**

**No. 36.**

United States District Court
W. D. Kentucky, at Louisville.
Aug. 10, 1956.

C. Maxwell Brown, Louisville, Ky., for libelant.

Charles F. Wood, Peter, Heyburn & Marshall, Louisville, Ky., for respondents.

SHELBOURNE, Chief Judge.

The libel in this proceeding in Admiralty was filed April 22, 1955, and is a case, as recited in the libel, for wages * * * for maintenance, cure and damages.

Alta C. Haycraft seeks to recover for wages $2,430 against the Steamer Java Sea and the additional sum of $10,000 "damages, maintenance and cure, from the respondent American Barge Line Company, Inc."

The case was tried to the Court without a jury December 1, 1955. Briefs are filed, and the matter is before the Court on submission and for final disposition.

From the evidence heard, the Court makes the following—

### Findings of Fact

1. Libelant Alta C. Haycraft at the time she sustained the injury complained about was a seawoman and cook and a member of the crew of the Steamer Java Sea, a vessel owned and operated by the American Barge Line Company, Inc. on the inland waters of the United States principally the Ohio and Mississippi Rivers and tributaries.

2. Libelant began work for the American Barge Line Company on June 5, 1953, her employment being regulated by the terms of an agreement between American Barge Line Company, the Mississippi Barge Line Company and the National Maritime Union of America, C.I.O. Article IX of that agreement provides for swing time and is as follows—

"A. *Swing Time.* Each employee shall have due him and shall receive .5 of a day of swing for each day he is employed on the Companies' towboats. The Company shall make every effort to schedule the crews in such a manner that no employee shall have due him more than 45 days of swing; nor shall he run out of swing completely. The Company will endeavor to schedule the employee on vessels operating in the area in which his home port is located whenever possible.

"It shall be the responsibility of the Company to notify an employee returning off swing as far in advance as possible as to where and when he is to board the vessel. It shall be the responsibility of the employee to keep the Company informed as to how he can be reached.

"B. *Relief.* An employee shall have the right to request relief after 45 continuous days worked. The Company shall make all reasonable efforts to relieve the employee within seven days of the request, but shall be obligated to relieve such employee within a period of 20 days after such relief is requested and the Company shall have the sole right to determine, within limitations, the time and place of relief. The Company shall have the right to relieve employees whose total accumulations of swing time exceeds 30 days and in case of layup or reductions in force irrespective of swing time, the time and place of such relief to be determined by the Company. An employee leaving a boat prior to the expiration of 45 continuous days worked, or thereafter, if he leaves at a time or place not designated by the Company shall not be considered as properly relieved. In case of an emergency, however, an employee may request relief prior to the expiration of the 45 days or thereafter

at a time or place not designated by the Company and such a relief shall not be regarded as a quit or discharge. The employee who has worked more than 45 days and is relieved in an emergency as above provided shall not receive transportation to his home or home port but his transportation will be paid on call-back. The employee who has worked less than 45 days and is relieved in an emergency under the above circumstances shall not receive transportation to his home or home port and shall have deducted his last transportation as provided under transportation but will be paid transportation on call-back.

"An employee who has completed 45 continuous days worked and has requested relief and has not been relieved within 20 days following such request shall be paid an additional day of pay for each day worked beyond such period.

"C. *Call-Back*. The Company shall have the right to call back an employee who is off on swing of 20 days or more after the expiration of 20 days' time off, except in the case of emergencies, irrespective of the amount of the employee's remaining swing time. If an employee, at the time he is relieved from employment has 20 days or less of swing to his credit, he shall be subject to recall at any time.

"D. An employee properly relieved to go on swing time may draw up to 40% of the money due him in the current payroll period and the balance due shall be paid from the office, in the regular payroll routine."

3. On October 1, 1953, libelant was assigned as cook on The Java Sea and about 8:30 A. M. on that day, when the vessel was about ten miles North of Baton Rouge, Louisiana, on the Mississippi River, she had gone from the galley to the rear of the deck to the port side along the stern of the vessel to cast into the river empty cartons in which supplies had been received for use in the galley.

The galley and mess hall of The Java Sea constituted the rear structure on the main deck of the boat. The rear wall was some 12 to 16 feet from the stern edge of the deck and at the time of her injury there was an aluminum yawl located at the rear of the deck parallel to the stern of the boat. There was a hatch cover two and one half feet square and three inches above the surface of the deck covered with a metal top. The hatchway was approximately nineteen inches from the rear of the galley wall and the rear of the hatch cover was twelve to fifteen inches from the edge of the yawl.

4. Libelant at the time of the accident weighed 243 pounds and she came from the door of the galley to the rear deck of the boat and passed between the rear edge of the hatch cover and the side of the yawl, proceeded to the port side of the vessel and threw the empty cartons in the river. This trip was made without incident. Returning to the galley, and in passing again between the edge of the yawl and the hatch cover, she struck the little toe of her left foot against the raised edge of the hatch cover, fracturing her toe. She says that at the time she struck her toe against the hatch cover she was giving her primary attention to an oarlock which was projected from the side of the yawl at the top of the gunnel.

The hatch cover structure on The Java Sea was similar to hatch covers on other vessels of the American Barge Line on which libelant had been employed as cook and was not guarded by railings or other structure, but according to the witnesses for respondents, was used as part of the walkways on the rear of the boat and was of construction that met the requirements and passed the inspection of the Marine Authorities charged with the responsibility of inspecting similar craft.

5. The injury to libelant's toe was painful and was reported by her through regular channels to the Captain of The Java Sea. She continued work and on October 6 was transferred from The Java Sea to a sister ship, the Constitution.

On October 12, 1953, the Constitution came to Memphis and libelant went to Dr. George Gish a physician there who examined her injury. He testified on his examination he found the patient's toe in good alignment, healing properly and that his treatment consisted of immobilizing the toe and strapping the foot to a wooden shower sole as a splint.

Mrs. Haycraft says she wore this splint for approximately ten days when it began to irritate her foot and that she herself removed it.

Her next medical treatment was at the United States Public Service Hospital at New Orleans, Louisiana, October 30, 1953, where she was treated as an out patient, at which time her foot was x-rayed and she was advised to use hot salts baths on her foot.

She was on swing time from October 30, 1953, to December 5, 1953, when she was again assigned to The Java Sea. In the meantime, she had been treated at Louisville by Dr. James E. Winters on November 18 and 25. She obtained from Dr. Winters, as physician in charge of the Louisville Kentucky Occupational Clinic, a certificate which is as follows; "This is to certify that Alta Haycraft is able to return to full duty on a marine vessel."

She continued on The Java Sea from December 6, 1953 to January 4, 1954, at which time she used 18 swing days reporting back to be assigned on the Steamer Bayless January 23, 1954 to February 4, 1954 and was then transferred to the Casablanca where she continued work up until February 26. She was again on swing time until March 17, 1954, on which date she was assigned to another ship of respondent American Barge Line, the Guadalcanal, on which she continued until May 21, 1954. She was sick on May 27, 1954 and a letter signed by the Crew Dispatcher of respondent advised her that she was being removed from the seniority list as of May 27, 1954, for the reason that libelant was alleged to have quit the Steamer Guadalcanal on May 21, 1954, without being properly relieved.

There is filed in the record by respondents a letter written by libelant in response to respondents' letter of May 27, advising her that her seniority had been broken. In this letter she asserted she had not quit and had not left the Guadalcanal without being properly relieved.

She states that she left the Guadalcanal after being continuously on duty 56 days in order to get to a hospital for a physical checkup. In the latter she attributes her leaving the Guadalcanal at Memphis to the fact that Captain James Templeton was transferred to the Guadalcanal as Captain in charge and because of her feeling that Captain Templeton was hostile toward her. She says she asked the Steersman to secure relief for her because she feared for some cause she might lose her seniority.

It is her contention that Reuben Williams, who succeeded the Steersman to whom she made the request for relief, advised her that she could be relieved at Memphis and that Ruby Bradford who was already on board would be her relief.

She says that when she left the Guadalcanal at Memphis, she was paid 40% of her then due wages and given her "separation papers", but was not provided transportation pay to her official station at Louisville.

She returned at her own expense and on June 28, 1954, she was employed as a cook at the Hollywood Steak House, where she continued to work until November 29, 1954.

There was no testimony in the case that Mrs. Haycraft sought or received medical attention from May 21, 1954 until her first interview with Dr. Winters November 18, 1954, while employed regularly by the Hollywood Steak House in Louisville.

■ 6. Libelant expended for transportation from Memphis to Louisville for plane fare $22.15, $4.50 for taxi fare in New Orleans. She purchased on prescription of her physician a pair of orthopedic shoes for $16.95, an aggregate sum of $42.50, which she is entitled to recover in this action as maintenance.

She worked continuously from March 17, 1954 to May 21, 1954, a period of sixty three days during which she acquired swing time to the extent of thirty one days for which she was paid. However, the swing time extended beyond June 5, which rounded out a year of service under her employment and entitled her under the provisions of the union contract of employment to vacation pay in the sum of $116.60.

7. When libelant obtained the certificate from Doctor Winters November 25, 1953 that she was able to return to full duties, the injury which she had received on October 1, 1953 had reached such improvement as reasonably might be expected to result from nursing, care and medical treatment. This terminated respondents' obligation to provide cure for her injury.

### Conclusions of Law

I. Libelant as cook on the vessels of the American Barge Line, including The Java Sea, upon which she was working at the time of her injury, was a seawoman and a member of the crew. Petition of Feldman (The Gloria F.), D.C.N.Y., 120 F.Supp. 740; Carumba v. Cape Cod S. S. Co., 1 Cir., 123 F.2d 991; Marceau v. Great Lakes Transit Corporation, 2 Cir., 146 F.2d 416.

This action to recover damages on account of negligence, although not specifically recited as such in the complaint, is an action in personam against the ship's owner and her action for maintenance and cure may be maintained against the ship. Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254.

II. A seaman's recovery for maintenance and cure is measured by the reasonable cost needful in the immediate future for maintenance and cure of a kind and for a period which can be definitely ascertained. This period does not extend beyond the "fair time" in which to effect such improvement as may reasonably be expected to result from nursing and medical treatment. Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993; Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L. Ed. 850.

III. The act of negligence relied upon by libelant in this case is the placing of the yawl on the deck of The Java Sea and it is contended that this brought about a condition of unseaworthiness of The Java Sea which amounts to negligence and entitles libelant to recovery.

In the case of Cookingham v. United States, 3 Cir., 184 F.2d 213, 215, the Court said

"* * * * unseaworthiness does not extend so far as to require the owner to keep appliances which are inherently sound and seaworthy absolutely free at all times from transitory unsafe conditions resulting from their use, * * *."

The proof is convincing that the aluminum yawl was kept upon the aft deck. Apparently this provided a convenient place for the occasional use of the yawl by the members of the crew. Therefore, it is held that the libelant's injury did not result proximately from negligence on the part of the respondent nor did any negligence of the respondent contribute to her injury.

The proof is convincing that her injury was due to her own inattention to the raised cover on the hatch.

IV. The raised hatchway against which libelant struck her foot was normal equipment on the ship and with that condition, she was familiar. Lake v. Standard Fruit & Steamship Co., 2 Cir., 185 F. 2d 354.

V. The libel in this case should be dismissed in so far as it seeks to recover on account of negligence on the part of the American Barge Line Company or on account of any alleged unseaworthiness of The Java Sea. Wilson v. United States, 2 Cir., 229 F.2d 277; Calmar S. S. Corp. v. Taylor, supra. (In this last action the injury claimed by libelant was to his foot caused by stubbing his toe against an object lying on the floor of the boiler room where he was employed.) Actionable negligence was not shown. See also Dixon v. United States, 2 Cir.,

219 F.2d 10; Petition of Feldman (The Gloria F.), supra.

### Conclusion

Libelant is entitled to a decree awarding her $42.50 on account of maintenance and cure, $116.60 on account of one weeks' vacation pay under the terms of the contract of employment, with interest from April 22, 1955, and to recover her costs in this action expended.

Her libel seeking recovery for negligence and on account of alleged unseaworthiness will be dismissed.

A decree in accordance with this conclusion will be submitted by Counsel for libelant, on notice to Counsel for respondents.