Adam LOUVIERE

v.

The FIDELITY AND CASUALTY COM-PANY OF NEW YORK.

Civ. A. No. 8179.

United States District Court
W. D. Louisiana,
Lake Charles Division.

Aug. 14, 1962.

Nichols & Drewett, Lake Charles, La., for plaintiff.

Plauche & Stockwell, Lake Charles, La., for defendant.

HUNTER, Judge.

Plaintiff, claiming to be a seaman, alleges several causes of action:

(1) Under the Jones Act on the grounds of negligence of The Offshore Company;

(2) Under the General Maritime Law based on unseaworthiness of The Offshore's drilling rig;

(3) And in the alternative, for benefits under Louisiana Workmen's Compensation Act, and

(4) For maintenance and cure.

Defendant, Fidelity and Casualty Company of New York, is the insurer of The Offshore Company. Coverage is conceded. The case was tried to the Court and we proceed to find the facts and state conclusions:

1. Plaintiff, Adam Louviere, is a resident and citizen of Calcasieu Parish, Louisiana.

2. Defendant (Fidelity) is a foreign corporation not domiciled in Louisiana but authorized to do and doing business within the State of Louisiana. Its principal place of business is elsewhere than in the State of Louisiana.

3. More than $10,000 is involved.

4. During February, 1960, Adam Louviere was employed as a member of the crew of Rig No. 54, which was at that time and at all times pertinent a vessel operating on navigable waters.

5. While so employed in February of 1960, Louviere slipped and fell on one of the steel decks of Rig No. 54.

6. At the time Louviere slipped and fell, Rig No. 54 was located more than one mile out in the Gulf of Mexico.

7. There was no negligence on the part of The Offshore Company, its agents or servants that caused Louviere to slip and fall on the deck.

8. Louviere was caused to slip and fall by the water and oil which had accumulated in one particular spot on one of the steel decks of Rig 54.

9. The accumulation of this oil and water rendered the rig unseaworthy at the time and place of the accident. Because of this accumulation, Offshore failed in its obligation to furnish a deck which was reasonably suitable and fit for the purpose intended.

10. The aforesaid unseaworthy condition of the deck was a proximate cause of the plaintiff's falling and his resulting injuries.

### WAS THERE A CASUAL RELATION BETWEEN THE HERNIAS AND THE FALL?

Immediately before plaintiff went to work for Offshore he was given a pre-employment physical examination. This examination was made by Dr. Hargrove who stated:

"Gentlemen:

"I examined Adam Louviere about June 1, 1959 * * * at that time he had no hernia * * * and no potential hernia."

"Very truly,
"/s/ M. V. Hargrove, M.D."

Louviere fell in February of 1960. He never made any complaint to any of his fellow workers or to his foreman, except to the eye witness Broussard; but Louviere, immediately upon his return to his home some three days later, informed his wife that he had hurt himself and that he thought that he had ruptured himself.

Plaintiff continued to work for The Offshore Company until March 16, 1960 and made no report of the accident. Plaintiff left The Offshore Company on March 16th because he did not wish to get on a scaffolding over water because he was scared to get upon the rig, and h~ so informed his foreman.

On July 6, 1960, plaintiff applied for employment with CitCon Oil Corporation. He was given a pre-employment physical by Dr. J. W. Crookshank. Louviere was found to have bilateral inguinal hernias on July 6, 1960. Everyone is in accord that he has those hernias now and did have them on July 6, 1960.

11. Considering the facts of this case as a whole, we conclude that plaintiff's hernias had a casual connection with and were produced by and resulted from his fall on one of the steel decks of Rig 54 at some time in February of 1960.[1]

### CONTRIBUTORY NEGLIGENCE

Defendant asserts that even if there was an unseaworthy condition the plaintiff himself was negligent and the accident was either caused by plaintiff's negligence or such negligence contributed to its occurrence.

All agree that even though where, as here, liability is pegged solely on unseaworthiness, the amount of damages must be reduced in the proportion that plaintiff's own fault contributed to the injuries. (Seas Shipping Company v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L. Ed. 1099; Pope and Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; Ross v. Steamship Zeeland, 4th Cir., 240 F.2d 820).

Both Louviere and Phillip Broussard, the witnesses on whom the Court relied to find unseaworthiness, testified that they were fully aware that the deck where Louviere slipped was washed down daily, that water did stand on it, that oil had been there in the past, and that they saw

---

1. During the second day of the trial defendant filed a formal plea of laches. The filing was permitted and the plea is before the court. That is to say, we have permitted defendant to amend its answer so as to include the plea of laches, which we feel cannot be sustained.

the deck and knew of these general conditions at the time of the accident. We find as a fact that Louviere was negligent in failing to watch where he was going and in failing to take ordinary normal precaution in walking over the area whereupon he slipped. We find also that this negligence was a proximate cause of the accident.

12. There are no precise standards which can be applied to determine the proportion in which a plaintiff's negligence contributes to the happening of an accident, but under all the conditions of this case we find that plaintiff's fault contributed to the accident to the extent of 50%. The defendant will therefore be liable only for 50% of the damages suffered by plaintiff.

## QUANTUM

The following facts are not disputed:

13. Plaintiff left the employ of The Offshore Company on March 16, 1960.

14. Plaintiff applied for and received unemployment compensation for 13 weeks thereafter at the rate of $35.00 per week.

15. In August of 1960 he went to work for Bill Gray at a farm around Iowa, Louisiana for which he received compensation at the rate of $50.00 per week and a home for him and his family to live in.

16. During that time, except for the first two or three months, he rented his own homeplace in Sulphur, Louisiana.

17. Plaintiff worked for Bill Gray until sometime in April of 1961.

18. Thereafter, plaintiff collected nine weeks' unemployment compensation at the rate of $35.00 per week, and shortly thereafter earned approximately $200 from other jobs including truck driving and painting a boat.

19. In the latter part of August, 1961, plaintiff went to work as a janitor at the W. W. Lewis School in Sulphur, Louisiana (where he is still employed), for which he receives $195.00 per month.

20. Prior to going to work for The Offshore Company in mid-1959, between the years of 1956 and 1959, plaintiff had worked primarily as a farmer where his earnings were approximately $55.00 per week, including what roughnecking work he could get on the side.

It is apparent that plaintiff has not proven that the hernias kept him from being gainfully employed. The truth is that he makes almost as much now as he normally made prior to his going to work for Offshore. However, considering everything, the Court feels that Louviere sustained a loss of earnings in the amount of $100 per month for the period from March 15, 1960 through August 15, 1962 —twenty-nine months. Accordingly, we find:

21. Adam Louviere suffered a loss of past earnings in the amount of $2,900.

Plaintiff's counsel says in brief:

"The plaintiff testified that he was willing to undergo surgery, and the writer can state without equivocation that in the event plaintiff receives an award from this Honorable Court that plaintiff will undergo surgery, because he has also informed the writer to this effect. Therefore, in all fairness to defendant, we do not think any award should be made for loss of earnings past approximately twelve weeks from the date of the decision of this Court * * * because that is the approximate period predicted as to a recovery."

22. Based on plaintiff's testimony and upon this statement by his counsel, and upon the testimony of all the doctors to the effect that this man will have recovered after twelve weeks following the operation, the Court finds loss of future wages to be $300.

23. Plaintiff is entitled to recover for pain and suffering, past, present and future, in the amount of $4,000.

24. Plaintiff is entitled to a recovery of $1,000 for future medical expenses, which amount the doctors testified would cover the hospitalization and surgery relative to the hernia operation (which all of the doctors recommended as a cure for Mr. Louviere's condition).

25. Damages are itemized as follows, to wit:

| | | |
|---|---|---|
| A. | For loss of past earnings | $2,900.00 |
| B. | For loss of future earnings | 300.00 |
| C. | For medical and hospital expenses in connection with future hernia operation | 1,000.00 |
| D. | For pain and suffering, past, present and future | 4,000.00 |
| | TOTAL | $8,200.00 |

Reduced by one-half, the amount which Mr. Louviere's own negligence contributed to this damage, Mr. Louviere is entitled to a judgment of $4,100.00.

## MAINTENANCE AND CURE

■ On his unseaworthiness claim, Louviere is entitled to full consequential damages (reduced only in proportion to his own negligence), but payments for maintenance and cure must be limited to the period during which he was undergoing "cure", i.e. while he was undergoing medical treatment tending to improve his condition (Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L. Ed. 850; Ryan v. United States Lines Company, 1962, 2nd Cir., 303 F.2d 430.

■ We are well aware of the Supreme Court's decision in Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed. 2d 88, reversing the action of a Court of Appeal, 4 Cir., 291 F.2d 813, in permitting earnings to be set off against maintenance. However, the facts of this case are such that maintenance is not now owed because plaintiff failed to even attempt to correct his hernia condition. Had he attempted to seek aid from either the local Charity Hospital, or a Veterans' Hospital, or to make credit arrangements to have the surgery done privately, and was unable to do, there would be merit to his claim for past maintenance. But the plaintiff did none of these things and waited six months before notifying Off-

shore of his claim. (Bowers v. Seas Shipping Company, 4th Cir., 185 F.2d 352; Repsholdt v. United States, 7th Cir., 205 F.2d 852). Besides, past maintenance is not due because the nature of plaintiff's disability is such that there was no medical treatment which would improve his condition except surgery and there was no way to force plaintiff to submit thereto, and not until the day of the trial did he affirmatively state he would so do. If he does submit to surgery he will be entitled to maintenance and cure as set out hereinafter.

## CONCLUSION

Judgment therefore is:

■ (a) Plaintiff's demand for damages under the Jones Act (46 U.S.C.A. § 688) is denied because no negligence has been proven.

■ (b) Plaintiff's demand for benefits under the Louisiana Workmen's Compensation is denied because the accident occurred in the navigable waters of the Gulf of Mexico and the relationship of the parties is governed exclusively by federal law.

■ (c) Plaintiff's demand for damage under the general maritime law is well founded, based on our finding of unseaworthiness and proximate cause. Damages thereunder to be recovered by plaintiff are fixed at one-half of $8,200.00.

(d) The demands for maintenance and cure are denied, but should complainant undergo the hernia operation within ninety (90) days of the finality of this decree, then and in that case this judgment will be amended by making an award for cure in the sum of $1,000 [2] (which is the highest amount any of the doctors testified would cover hospitalization and surgery relative to the hernia operation, which all say will cure Mr. Louviere's condition) and by making an award of maintenance in the sum of $8.00 per day for twelve (12) weeks beginning on the day that the operation is perform-

---

2. This would be reduced by $500.00 because of the award therefor under the general maritime law.

ed (all doctors agree that maximum recovery would take place within that time).

Judgment is granted in the amount of $4,100 with interest beginning as of today. This opinion will constitute the findings of fact and conclusions of law of this Court and is a final judgment of this Court. No further decree is necessary.