291 F.2d 813
 Clifford VAUGHAN, Appellant,
v.
N. J. ATKINSON, a non-resident, individually, and as Master; National Shipping & Trading Corporation, and American Waterways Corporation, both foreign corporations, as owners and/or operators of THE American S.S. NATIONAL LIBERTY, Appellees.
 No. 8269.
 United States Court of Appeals Fourth Circuit.
 Argued April 4, 1961.
 Decided June 6, 1961.
 
 Burt M. Morewitz, Newport News, Va., for appellant.
 Walter B. Martin, Jr., Norfolk, Va. (Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellee American Waterways Corporation.
 Before SOBELOFF, Chief Judge, and SOPER and BOREMAN, Circuit Judges.
 SOPER, Circuit Judge.
 
 
 1
 This appeal challenges the ruling of the District Judge in an admiralty case that the amount due a seaman for maintenance should be offset by his earnings during the period of his illness.
 
 
 2
 There is no dispute as to the facts. Clifford Vaughan served as seaman on the S.S. National Liberty, an American ship, from November 26, 1956 to March 2, 1957, when he was discharged at Norfolk, Virginia, upon the termination of the voyage. On January 5, 1959, he filed a libel against the ship and its owners claiming damages on two causes of action: First, that through the unseaworthiness of the vessel and negligence of the defendants he had contracted tuberculosis and, second, that he was entitled to maintenance and cure until he recovered from his illness. The first cause of action was decided against the seaman and on this appeal we are concerned only with the second cause of action.
 
 
 3
 Upon his discharge from the ship the libellant was furnished by the master with a certificate entitling him to treatment at the Public Health Service Hospital. He entered the hospital and was given treatment and was discharged as an out-patient on June 6, 1957, and continued in that status until August 25, 1959, when he was notified that he was fit for duty. The owners of the ship paid nothing to the libellant for maintenance prior to the institution of the suit. The District Judge held that this was a dereliction of duty owed to the libellant and ordered the respondents to pay maintenance at $8 per day with interest from June 6, 1957, when the libellant became an out-patient, until he was declared fit for duty on August 25, 1959. The judge found, however, that the libellant had suffered no physical or mental injury from the failure of the respondents to furnish maintenance and that the libellant had actually earned more by driving a taxicab during his out-patient status than he had earned before signing on the vessel. Upon these facts the judge held that the libellant was not entitled to additional damages by reason of the ship's delinquency and that the amount due him for maintenance should be offset by his earnings during the interval.[1]
 
 
 4
 This conclusion was in accord with recognized authority. It was held in Wilson v. United States, 2 Cir., 229 F.2d 277, that the right to maintenance and cure lies on the border line between "contract" and "quasi contract" and is sufficiently contractual so that the seaman has the duty to mitigate damages. This decision was followed by the same court in Perez v. Suwanee S.S. Co., 239 F.2d 180, where the amount found by the court to be due to a seaman for maintenance was reduced by the amount of his earnings during the period of his incapacity.
 
 
 5
 There is nothing in the decision of the Second Circuit in Reardon v. California Tanker Co., 260 F.2d 369, on which the libellant relies on this appeal, at variance with these holdings. In that case the seaman brought suit under the Jones Act, 46 U.S.C.A. § 688, for personal injuries sustained while serving on the defendant's vessel. In the District Court defendant's counsel offered to prove that the defendant had paid the plaintiff the sum of $576.00 (at the rate of $8.00 per day) for maintenance and cure which exceeded his actual expenses for these purposes. The defendant's contention was that the excess should be credited against any award to the seaman for lost earnings. The court held that the evidence was inadmissible and instructed the jury that the plaintiff was entitled to recover for loss of wages and pain and suffering resulting from the injury but not for the cost of his room and board during the period of convalescence. On appeal it was first held that the trial court was in error in rejecting the proffered evidence, but subsequently on reargument before the full court this decision was reversed on the ground that the amount of $8.00 per day for this item had been fixed by agreement between the parties and neither party could repudiate it. It is plain that this decision did not overrule the previous decisions of the same court in the Wilson and Perez cases, supra. On the contrary, the final decision in Reardon expressly approved the view set forth by Judge Medina in his dissent to the original opinion wherein he expressly approved the decision in the Perez case and said that, in deducting the amount of the earnings from the award of maintenance in that case, the court did no more than reaffirm the well settled principle that the purpose of maintenance and cure is to make the seaman whole and that if what he earns is added to the allowance he will get something more than he is entitled to.[2]
 
 
 6
 Although the seaman in the instant case suffered no damages from the failure of the respondent to pay maintenance until ordered to do so by the court, he was obliged to pay attorney's fees in the prosecution of the suit. On this account he urges that he should be allowed an amount to cover this expense in the judgment of the court. There is, however, no authority for such procedure. The general rule is that in suits for breach of contract counsel fees may be allowed to the plaintiff if he can show that defendant's breach of contract has caused litigation against third parties in which the plaintiff has been obliged to secure the services of counsel, but the rule does not deal with attorney's fees paid by the plaintiff in his suit against the defendant himself for breach of contract. 5 Corbin on Contracts § 1037; Restatement of Contracts, Vol. 1, § 334; 15 Am.Jur., Damages, § 142; McGaw v. Acker, Merrall & Condit Co., 111 Md. 153, 160, 73 A. 731. It was early held that counsel fees are not allowable to the gaining side in admiralty beyond the costs and fees fixed by statute. The Baltimore, 8 Wall. 377, 392, 19 L.Ed. 463; Tullock v. Mulvane, 184 U.S. 497, 511, 22 S.Ct. 372, 46 L.Ed. 657.
 
 
 7
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The seaman made two voyages on the ship between November 26, 1956 and March 3, 1957, when he signed off at the end of the voyage. He was treated at the hospital between March 7, 1957, when he applied, and August 25, 1959, when he was discharged as cured. During most of this period he was an out-patient. By the decree of the court he was allowed maintenance for 820 days between March 7, 1957 and August 25, 1959, at the rate of $8 a day, amounting in the aggregate to $6,560. The earnings which he was able to make during this period as a taxicab driver, without injury to himself, were offset against this sum
 
 
 [2]
 In Yates v. Dann, D.C.Del., 124 F.Supp. 125, 141, the propriety of setting off earnings against maintenance was not specifically discussed; but the District Judge cut down a claim for maintenance from $18,206 to $2,828 because the seaman had been awarded damages for past and future loss of wages. It was said that cumulative awards are improper. In reviewing the decision the Court of Appeals held that in principle this decision was correct. See 3 Cir., 223 F.2d 64, 67. The decision is in harmony with the authorities cited in the text. Damages awarded for loss of wages caused by injuries were there taken into consideration in computing the claim for maintenance, while in the pending case wages actually earned by the seaman without injury to himself were offset against the claim for maintenance
 
 
 
 8
 SOBELOFF, Chief Judge (dissenting).
 
 
 9
 Even more than the result in the immediate case, the tendency of the court's decision and its potential impact upon future cases give me concern. The holding carries ominous implications for the future of the ancient right of maintenance and cure.
 
 
 10
 Reliance is placed upon two decisions in the Second Circuit which are inconsistent with each other and which, in any event, fail to apply the proper standard in determining the right to maintenance and cure. For reasons to be stated, I prefer the rule announced by the Third Circuit in Yates v. Dann, D.C.Del. 1954, 124 F.Supp. 125, affirmed on this point 3 Cir., 1955, 223 F.2d 64.
 
 
 11
 We are dealing here with no abstract question, but with a legal issue arising upon judicially established facts. We begin with the District Court's unchallenged finding that from June 6, 1957, when Vaughan was discharged as an inpatient of the United States Public Health Service Hospital and given outpatient status, until August 25, 1959, when he was pronounced fit for duty, he was entitled to maintenance. The owner was duly notified and it is undisputed that a copy of the hospital record was sent by registered mail to its insurance carrier. Whether the plaintiff was suffering from active tuberculosis, as suspected, was not definitely determined, but the significant finding of the District Court was that "he undoubtedly had a condition which required treatment."
 
 
 12
 The validity of this explicit finding which is the basis of the seaman's claim for maintenance was at no time contested. It has not been suggested that maximum recovery was attained earlier than August, 1959, the date adopted by the District Court, nor is it asserted that the plaintiff was earlier fit to perform seaman's duties. Nevertheless the shipowner, who knew of the man's condition, simply withheld payments for maintenance for this long period, as well as the shorter period from March 7, 1957, to March 17, 1957, when also Vaughan was an out-patient. The District Court adjudged that in so withholding all maintenance the shipowner was derelict in its duty to the seaman. Neither in the District Court nor here was any attempt made to defend or justify this dereliction, but a reduction in the amount of maintenance was sought and obtained by the owner on account of Vaughan's earnings as a taxicab driver during the many months of his conceded need for treatment and incapacity for seaman's duty. It is noteworthy that the amounts earned from the operation of the taxi in no week equalled either the wages which Vaughan earned as a seaman or the contractually fixed maintenance allowance.
 
 
 13
 The only penalty the owner suffers for this callous violation of its duty is that 6% interest has been added to the accumulated liability. By contrast, the effect of the shipowner's withholding of payments and forcing court action, has been to subject the plaintiff to substantial expense for counsel fees.[1] This circumstance is disregarded in making the award. Also, as the afflicted plaintiff was unable to demonstrate and calibrate the effect of his being compelled under economic pressure to sustain himself by part-time taxi driving, no claim for aggravation of his condition has been asserted against the employer for delaying the payments due.[2]
 
 
 14
 We have not been cited precedents authorizing reimbursement for even reasonable counsel fees, and not even in a case like this where the consequence of the owner's dereliction bears heavily on the plaintiff.[3] On the other hand, the cases cited for the proposition that there may be no reimbursement for legal fees are from other areas of litigation where there is not the strong policy of the law that we have here, to avoid oppression of sick and impecunious seamen.[4]
 
 
 15
 However, if we are powerless to award counsel fees, or penalties, to do full justice, it becomes all the more imperative not to give undue favor to those who knowingly and wilfully breach the obligation of maintenance by making their improper conduct safe and even profitable.[5]
 
 
 16
 The first of the cases relied on by the majority, Wilson v. United States, 2 Cir., 1956, 229 F.2d 277, 281, is different from our case. Wilson obtained work as a relief engineer on ships in port, doing much the same work he had done for the defendant. Unlike the Wilson case, there is no intimation here that Vaughan was fit for work on a vessel at any time before August, 1959. Moreover, the language of the Wilson case, which is made the premise of the majority opinion, that "maintenance and cure lies on the borderline between `contract' and `quasi-contract' and is sufficiently contractual so that the seaman has the duty to mitigation damages" is in direct conflict with the opinion of Justice Cardozo in Cortes v. Baltimore Insular Line, 1932, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368, and with the holding of the Third Circuit in Sims v. United States of America War Shipping Adm'n, 3 Cir., 1951, 186 F.2d 972, certiorari denied 342 U.S. 816, 72 S.Ct. 31, 96 L.Ed. 617, where Judge Goodrich said:
 
 
 17
 "This obligation for maintenance and cure is, as Mr. Justice Cardozo says, `imposed by the law itself as one annexed to the employment * * *. The duty * * * is one annexed by law to a relation, and annexed as an inseparable incident without heed to any expression of the will of the contracting parties.' Cortes v. Baltimore Insular Line, 1932, 287 U.S. 367, 371-372, 53 S.Ct. 173, 174, 77 L.Ed. 368. It is no more a contract than the obligation of a husband to support his wife is one of contract. Each arises out of a relationship voluntarily entered into. But these duties are imposed by the law as an incident to the relationship, not a matter of contract. We do not think, therefore, that the usual rules of damages for breach of contract to pay money are applicable." 186 F.2d at page 974.
 
 
 18
 See also Gilmore and Black, The Law of Admiralty, page 257.
 
 
 19
 The opinion of this court, like that of the court in Wilson, assumes that what is involved here is an ordinary contract, that the relief sought is damages for a breach of contract and that the rule of mitigating damages applies. This is at variance with the above language of Justice Cardozo speaking for the Supreme Court. The action for maintenance and cure is not one for damages. See Pacific S.S. Co. v. Peterson, 1928, 278 U.S. 130, 136-139, 49 S.Ct. 75, 73 L.Ed. 220. See also Aguilar v. Standard Oil Co., 1943, 318 U.S. 724, 730-731, 63 S.Ct. 930, 87 L.Ed. 1107.
 
 
 20
 The other Second Circuit case upon which the majority relies is Perez v. Suwanee S.S. Co., 2 Cir., 1956, 239 F.2d 180. There the court sets off against maintenance a convalescing seaman's earnings from employment as a dishwasher but ignores the dissimilarity of the work and the incapacity of the plaintiff to perform as a seaman — the features it had been at pains to point out in the Wilson case.
 
 
 21
 The theory of the Perez case is, I submit with deference, contrary to the spirit and doctrine of maintenance and cure which is deeply rooted in the admiralty law. See: Harden v. Gordon, C.C.D.Me. 1823, 11 Fed.Cas. page 480, No. 6,047; Reed v. Canfield, C.C.D.Mass.1832, 20 Fed.Cas. page 426, No. 11,641. Moreover, the course of decision in the Second Circuit strongly suggests that that court has not yet spoken its final word on this point. See Reardon v. California Tanker Company, 2 Cir., 1958, 260 F.2d 369.
 
 
 22
 The correct rule, I think, is to treat earnings during convalescence as wholly irrelevant, since Vaughan's right to maintenance and cure has been established in accordance with the governing Supreme Court decisions. See: Calmar S.S. Corp. v. Taylor, 1938, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993; Farrell v. United States, 1949, 336 U.S. 511, 69 S. Ct. 707, 93 L.Ed. 850.[6] Here the earnings during convalescence should be treated as having no more relation to the right to maintenance and cure than the relief payments received by the seaman in another Second Circuit case, Evans v. Schneider Transportation Company, 2 Cir., 1957, 250 F.2d 710. This is not unlike the "collateral source" rule recently applied by us in Price v. United States, 4 Cir., 1961, 288 F.2d 448, for Vaughan's earnings have no more to do with maintenance and are as collateral to maintenance as the civil service benefits were to damages in that case, or the insurance in United States v. Brooks, 4 Cir., 1949, 176 F.2d 482. Whether an employer's breach of its duty to provide maintenance throws the seaman on public relief or forces him to work while ill and still in need of treatment, the employer should not gain an advantage from his wrong. Maintenance is not designed to restore lost earnings, and the right to maintenance should be unaffected by incidental earnings ashore while the sailor is a patient under treatment and unfit to do seaman's work.[7]
 
 
 23
 True, in a suit under the Jones Act only such wages may be recovered as the plaintiff has lost by reason of the injury, but this is not such a suit. Likewise in a suit for wages alone, to recover for an unexpired period of a shipping contract, the employer could conceivably assert that the seaman had a duty to minimize his damages by reshipping as soon as possible after his illness. In such circumstances the mitigation rule might be appropriate. Also it may be granted that the nature and extent of a plaintiff's earnings might be evidence to support a conclusion that there was in fact no further need for treatment and that therefore the right to maintenance has terminated; but on this record no such finding was made or even proposed. The contrary finding was not appealed from and is not complained of.
 
 
 24
 The court's opinion makes reference to the provision in the union contract requiring the employer to pay $8.00 per day as maintenance. This provision will be read in vain for any suggestion that there may be a set-off of any kind from the allowable maintenance. On the contrary, it unqualifiedly entitles the seaman to the payment of weekly maintenance notwithstanding the considerations that have here been imported into the case.[8] The express requirement of the contract is that maintenance shall be paid when due, promptly and without making it necessary to resort to litigation. Here the employer violated every aspect of this protective provision.[9]
 
 
 25
 I would prefer to follow the rule laid down in Yates v. Dann, D.C.Del.1954, 124 F.Supp. 125, 140, and expressly approved on appeal by the Third Circuit, 223 F.2d 64, at page 67.[10] There, as here, the seaman returned to work while still under out-patient treatment by the Public Health Service. Although earnings were permitted to mitigate the wages payable as part of his damage award, yet his right to maintenance and cure was held to continue during the period in which he engaged in such work, undiminished by any earnings in that period. The court's holding was that a seaman was not to be penalized where he had not been discharged as an out-patient and should have been receiving maintenance but the employer withheld payments and the seaman returned to work from time to time.[11]
 
 
 26
 When a shipowner genuinely believes that the seaman is no longer in need of maintenance and cure he is not without means of protecting himself in an orderly fashion. The Public Health Service Hospitals, so far as I am aware, are not notoriously partial to seamen. The employer may have the seaman reexamined from time to time to ascertain his condition. He should not be permitted and emboldened to act unilaterally, denying maintenance to one under treatment as an out-patient. If, despite his awareness that the right to maintenance exists, the employer elects to ignore his plain legal duty, the court should not tell him that he may do so with impunity, even with possible gain. The shipowner is not entitled to assurance that if his pressure on the seaman fails the shipowner will suffer no disadvantage, while if it succeeds he will harvest the fruits of the sick man's labor though it may visit upon that man serious hardship short of demonstrated aggravation of the illness.
 
 
 27
 In summary, I find no sufficient warrant for a rule that rewards an owner's recalcitrance by automatically crediting him with earnings from part-time work ashore to which a sick man may be driven by the goad of hunger. Inevitably such a holding will serve as an inducement to owners, not only in doubtful cases, but even where, as here, no question was or could be raised as to the right to maintenance, to exert economic pressure on seamen to force them to work regardless of consequences to health.[12] This could not be squared with what Justice Stone, citing many cases, called "the liberality with which admiralty courts have traditionally interpreted rules devised for the benefit and protection of seamen who are its wards." Calmar S.S. Corp. v. Taylor, 1938, 303 U.S. 525, 529, 58 S.Ct. 651, at page 654.
 
 
 28
 If the rule of Yates v. Dann, supra, enunciated by the Third Circuit, is considered defective in permitting a sick or injured man to retain sums he has earned during convalescence when maintenance was admittedly payable but not paid, it is certainly a lesser defect than that embodied in the competing rule of the Second Circuit, which by turning such earnings over to a defaulting employer who presents no excuse for his default, offers temptation to other employers to practice delay and harshness.
 
 
 
 Notes:
 
 
 [1]
 The record shows that the attorney charged the seaman 50% of the award. I express no opinion on the reasonableness of the charge, as the majority does not deal with this question
 
 
 [2]
 Suit for aggravation of the physical condition can avail in only the limited number of cases where it is possible to demonstrate aggravation. In the vast majority of cases where maintenance benefits are unjustifiably withheld it will be unlikely that such aggravation can be satisfactorily proved or disproved, yet considerable hardship may have been inflicted on the sick or injured seaman. An award of interest, months or years later, cannot possibly be an adequate measure of redress in such cases
 
 
 [3]
 Despite the absence of recent specific holdings on this question, a reasonable argument can be made on principle and authority for the award of counsel fees here. It has been said that while admiralty courts lack equity jurisdiction, they may apply equitable principles. Gilmore and Black, The Law of Admiralty, pages 37, 38
 In equity, in exceptional cases where it has been deemed essential to the doing of justice, counsel fees have been allowed. Notably, in this circuit, Chief Judge Parker, upholding the award of a counsel fee against a labor union to a Negro who was compelled to bring suit to redress discriminatory conduct, wrote:
 "* * * Ordinarily, of course, attorneys' fees, except as fixed by statute, should not be taxed as a part of the costs recovered by the prevailing party; but in a suit in equity where the taxation of such costs is essential to the doing of justice, they may be allowed in exceptional cases. The justification here is that plaintiffs of small means have been subjected to discriminatory and oppressive conduct by a powerful labor organization which was required, as bargaining agent, to protect their interests. The vindication of their rights necessarily involves greater expense in the employment of counsel to institute and carry on extended and important litigation than the amount involved to the individual plaintiffs would justify their paying. In such situation, we think that the allowance of counsel fees in a reasonable amount as a part of the recoverable costs of the case is a matter resting in the sound discretion of the trial judge. * * *" Rolax v. Atlantic Coast Line R. Co., 4 Cir., 1951, 186 F.2d 473, 481, and cases there cited.
 For an application of the doctrine in an admiralty case, see opinion of Justice Story, in The Apollon, 1824, 9 Wheat. 362, 379, 6 L.Ed. 111, where a counsel fee was awarded to a party who was put to expense in recovering demurrage of a vessel wrongfully seized, as well as other damages occasioned by the seizure. The Apollon has been cited with apparent approval by Mr. Justice Frankfurter writing for the majority in Sprague v. Ticonic Bank, 1939, 307 U.S. 161, 59 S. Ct. 777, 83 L.Ed. 1184. See his footnote 2. In light of the discussion in Sprague, supra, it would appear that The Baltimore, 1869, 8 Wall. 377, 19 L.Ed. 463, although it has been many times cited for the contrary proposition, is really not controlling as to costs "as between solicitor and client" which are in issue here. See also I Am.Jur. Admiralty § 139 where, on the authority of The Apollon, it is stated:
 "It is the common course of the admiralty to allow counsel fees, either in the shape of damages or as part of the costs."
 
 
 [4]
 For the withholding even a portion of a seaman's wages a severe sanction is provided in the law by way of an award of two days' pay for each day that payment is withheld. The underlying policy (in respect to wages) would seem to justify a similar rule in the instance of an unwarranted retention of maintenance. However, the law with which we are here concerned does not go so far and we may not supply a penalty provision to give symmetry to the law
 For withholding benefits when due under the Longshoremen's and Harbor Workers' Compensation Act that Act does make provision for penalties. 33 U.S. C.A. § 914.
 
 
 [5]
 I do not intimate that if the seaman were permitted to recover reasonable counsel fees, his incidental earnings during convalescence could then be off set against his maintenance
 
 
 [6]
 Cf. Bradt v. United States, 2 Cir., 1955, 221 F.2d 325, where a seaman suffering from tuberculosis returned to maritime school on a full-time basis, and he was held entitled to recover for maintenance and cure as he was still undergoing curative treatment
 
 
 [7]
 See also Jones v. Waterman S.S. Corporation, 3 Cir., 1946, 155 F.2d 992. There an injured seaman was permitted to recover maintenance and cure from his employer, although in a previous action against a third party tortfeasor, which ended in settlement, he had sought to recover damages which included "substantially all the items recoverable by Jones as maintenance and cure and wages." 155 F.2d at page 995. See also discussion at page 996
 
 
 [8]
 Article II Section 13 of the union contract reads:
 "Section 13. Maintenance and Cure. When a member of the Unlicensed Personnel is entitled to maintenance and cure under Maritime Law, he shall be paid maintenance at the rate of $8.00 per day for each day or part thereof, of entitlement. The payment due hereunder shall be paid to the man weekly. This payment shall be made regardless of whether he has or has not retained an attorney, filed a claim for damages, or taken any other steps to that end and irrespective of any insurance arrangements in effect between the Company and any insurer." (Emphasis supplied.)
 
 
 [9]
 It must be understood, of course, that the seaman's rights are not restricted to the union contract, since the duty to provide maintenance and cure, as previously noted, "is one annexed by law to a relation, and annexed as an inseparable incident without heed of any expression of the will of the contracting parties." Cortes v. Baltimore Insular Line, 287 U.S. at page 372, 53 S.Ct. at page 174. With or without a union contract, the maritime law should tolerate no dilution of the remedy by allowing a set-off of earnings against maintenance and cure
 
 
 [10]
 The case was remanded for reasons unrelated to the present question
 
 
 [11]
 In Yates v. Dann, supra, the District Court did not reduce the libellant's maintenance award by the amounts earned by him while still under treatment as an out-patient, and plainly did not consider such a reduction proper, for it said that a seaman should not be thus "penalized." 124 F.Supp. at page 140. That this was the court's view is further demonstrated by the manner in which it framed the issue as to maintenance and cure. See 124 F.Supp. at page 129
 From the Court of Appeals' interpretation of the lower court's opinion, it is clear that the reason the maintenance award had been diminished in the District Court from $18,205 to $2,821 was that elements of maintenance had been included in the recovery of damages under the Jones Act. The libellant was demanding maintenance, not only as part of the wage award under the Jones Act, but also in a separate claim for maintenance, and objected to a reduction of the maintenance award in an amount corresponding to the maintenance included in the Jones Act award. It was this duplication, insisted upon by the libellant, that was condemned, for certainly the shipowner should not be subjected to a double recovery for maintenance. Equally certain is it that the Court of Appeals did not hold, just as the District Court did not hold, that the shipowner was entitled to a credit for earnings against his liability for maintenance and cure. In light of the Court of Appeals' opinion, it would appear, therefore, that the District Judge used the term "Wages" to include maintenance as well. Thus, as I read the direction of the Third Circuit to the District Court, duplicate awards against the owner for maintenance were to be avoided, and at the same time no credit for incidental earnings during convalescence was sanctioned.
 See also Hanson v. Reiss Steamship Company, D.C.Del.1960, 184 F.Supp. 545, 549-550, where citing Yates v. Dann, supra, a maintenance award was not reduced by the amount of the seaman's earnings from work on a fur farm during convalescence.
 
 
 [12]
 Courts will not fail to take judicial notice of the universally recognized fact that rest is an important therapeutic measure for patients suffering from tuberculosis and other pulmonary ailments