**BERKS TITLE INSURANCE CO., et al., Plaintiffs,**

v.

**Roger M. HAENDIGES, et al., Defendants.**

**No. C 81–1308.**

United States District Court, N.D. Ohio, E.D.

June 22, 1984.

Robert F. Linton, Akron, Ohio, for plaintiffs.

Stephen M. Darlington, Cleveland, Ohio, for defendant Fulton & Goss, Inc.

Michael F. Waiwood, Cleveland, Ohio, for defendants Roger and Lee Haendiges.

MEMORANDUM OPINION
AND ORDER

LAMBROS, District Judge.

This is an action for the recovery of money allegedly due for the breach of various related real estate contracts. This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332.

Plaintiffs' complaint essentially claims that Berks Title Insurance Co. (Berks), as subrogee to the rights and remedies of plaintiff Metropolitan Life Insurance Co. (Metropolitan), is entitled to recovery of certain sums it expended in defense and as a consequence of an action in state court known as *S & S Ceiling Partition Co. v. Calvon Corporation, et al.*, Case No. 30507, 75 CIV 0725 (Ct. Common Pleas, Medina Cty). That action arose as a result of the alleged breaches of contracts by the defendants Fulton & Goss, Inc. (Fulton & Goss), Roger M. Haendiges and Lee Haendiges, in incurring mechanics' liens on the real estate involved.

Defendant Fulton & Goss has answered, counter-claimed against Berks, and cross-claimed against the Haendiges. The Haendiges have answered, denying any breach of contract or liability.

Presently before the Court are motions for summary judgment on behalf of each party. William Steck, an original named defendant, has been dismissed pursuant to plaintiffs' notice of dismissal. Based on the pleadings and accompanying affidavits, it appears that there exist no genuine issues of material fact.

The essential facts in this case are that Roger Haendiges was the owner of a parcel of land on which he desired to construct a warehouse. Haendiges contacted Fulton & Goss, a mortgage broker, to obtain a permanent loan. The usual procedure for this type of transaction is for the mortgage broker to obtain a loan commitment from a permanent lender. The permanent lender ordinarily only agrees to loan upon completion of the building; the building being part of the security for the loan.

On September 12, 1973 Metropolitan issued a "commitment" to a "first mortgage Loan" in the amount of $890,000.00. On September 17, 1973, Fulton & Goss issued its "Mortgage Loan Commitment" for $890,000.00 to Roger M. Haendiges. On September 20, 1973, Fulton & Goss accepted Metropolitan's commitment by signature, representing that its own commitment had been accepted by Haendiges.

In pertinent part, the commitment from Metropolitan stated:

Metropolitan Life Insurance Company agrees to purchase from you (or directly from a bank to be designated by you, if mutually agreeable to you and us) the first mortgage Loan, identified below and in your Loan Submission on which this Commitment is based. Our agreement to purchase the Loan is subject to the satisfaction prior to, or concurrently with, our purchase of the Loan of each of the conditions of this Commitment, including those on the reverse side hereof and on any supplementary pages attached hereto.

\*   \*   \*   \*   \*   \*

This Commitment shall not be binding unless the attached counterpart is signed by you to evidence your acceptance and is returned to this office within twenty (20) days of the date hereof, together with your statement that the Borrower has accepted your commitment. Upon our receipt of the signed counterpart, subject to the terms and conditions of this Commitment, we shall be obligated to purchase and you will be obligated to sell the Loan herein described. If you do not offer the Loan to us for purchase in full compliance with the conditions of this Commitment on or before the expiration date, you, by your acceptance hereof, agree to pay to us forthwith as liquidated damages the amount, if any, shown under the caption "Liquidated Damages" to compensate us for time spent, services performed and expenses incurred in connection with this transaction. If the Loan has not been received by us for purchase by the expiration

date, our obligations hereunder shall cease unless the Commitment is extended by us in writing.

\* \* \* \* \* \*

1. Assignment of Security; The Mortgage; Absence of Liens. The evidence of indebtedness (herein called the "Note"), the security instrument (herein called the "Mortgage") and each other instrument required by us as security for the Loan shall be transferred to us in form and manner satisfactory to us. The Note shall be secured by a Mortgage which shall be a first lien on the unencumbered, marketable, fee simple absolute title to the real property, to easements appurtenant thereto (if any) and to all improvements to the property described in this Commitment and in the Loan Submission (herein collectively called the "Real Property"), free of the possibility of any (a) prior mechanics' liens, (b) prior materialmen's liens or (c) special assessments for work completed or under construction on the date of our purchase of the Loan. Any title exceptions will be subject to the approval of our Law Division.

\* \* \* \* \* \*

18. AGREEMENT WITH CONSTRUCTION LENDER. At the time of the execution of the construction loan documents, the construction lender shall agree to sell the loan to you and you shall agree, subject to all the terms, including the satisfaction of each of the conditions of this commitment, to buy the loan from the construction lender, and the borrower shall consent to such agreement.

19. COMBINED CONSTRUCTION— PERMANENT LOAN: The terms of the construction loan documents shall be such as to meet all the requirements in this Commitment which are to be complied with on the date of our purchase of the Loan. Prior to the commencement of construction, the combined construction and permanent mortgage shall be recorded or filed for record.

20. At our option, this commitment may be terminated unless within 30 days from the date of your acceptance hereof, we receive a letter, in form and substance satisfactory to us, from a bank that it will furnish sufficient funds so that the building or buildings will be completed in accordance with the terms and conditions of this commitment.

This commitment was set to expire on December 12, 1974.

In pertinent part, the commitment between Fulton & Goss and Haendiges stated:

## STANDARD CONDITIONS

1. Definition of Terms

"Applicant" means the person or persons by whom this commitment is signed. "Mortgagor" means any legal entity including the applicant who is or will execute the note and mortgage. "Lender" means Fulton & Goss, Inc. "Investor" means the third party who has issued a commitment to lender to purchase the mortgage from lender. "Issuance of this Commitment" means the date this commitment bears.

2. Agreement to Borrow and Lend

Applicant agrees to cause mortgagor to borrow from lender and lender agrees to lend the mortgagor the amount indicated herein subject to all of the terms, provisions and conditions of this commitment.

\* \* \* \* \* \*

5. Title Documents

Lender shall be furnished with a mortgage title insurance policy, in standard ALTA form, in the amount of the loan, issued by a title insurance company approved by lender, insuring the mortgage to be a valid first, prior, and paramount lien upon the premises, subject only to such exceptions as lender may approve. Lender shall also be furnished with a survey and licensed surveyor's certificate dated not more than 30 days before final disbursement of the mortgage proceeds and after the completion of all improve-

ments. The survey shall show all the dimensions and total square foot area of the plot, interior, lot lines if any, the dimensions and locations of all improvements, parking area and assessments, and the location of adjoining streets and the distance to and name of the nearest intersecting street.

\*    \*    \*    \*    \*    \*

11. Liability of Borrower

The lender agrees that in the case of default the holder of the note and mortgage will be required to look solely to the property secured hereunder for satisfaction of said note and mortgage, thereby precluding the holder from obtaining a deficiency judgment against the borrower.

On November 6, 1973, Cleveland Trust Company executed a construction loan as interim financing to Roger Haendiges as "Borrower" and Fulton & Goss. The loan instrument, which was subsequently recorded on November 21, 1973, specifically recognized that Haendiges had obtained a mortgage loan commitment from Fulton & Goss and that Fulton & Goss had obtained a mortgage loan commitment from Metropolitan. These commitments were attached to the Cleveland Trust instrument and incorporated by reference. The instrument then stated:

NOW, THEREFORE, Lender agrees to lend to Borrower the sum of EIGHT HUNDRED NINETY THOUSAND DOLLARS ($890,000.00), secured by a mortgage on the above described land for the purpose of constructing thereon a one-story industrial building and parking lot and Borrower agrees to construct said building and parking lot in accordance with Plans and Specifications approved by Lender and Fulton; Borrower further agrees to complete said building and parking lot in compliance with the covenants and terms and conditions of the Commitment from Fulton to Borrower dated September 17, 1973, said Commitment from Metropolitan to Fulton dated September 12, 1973 and the Building Loan Agreement entered into by and

between Borrower and Lender dated _____, 1973; Fulton agrees to comply with the covenants, conditions and terms of the Commitment issued to it by Metropolitan and further that if the one-story industrial building and parking lot is completed in compliance with its Commitment to Borrower and in compliance with the Commitment to Fulton from Metropolitan that it will cause to be paid to Lender the principal balance of its construction loan no later than October 12, 1974 or any extension of such date as agreed upon by Lender, Borrower, Fulton and Metropolitan ....

On January 16, 1974, Roger and Lee Haendiges executed a valid note and mortgage on the property to Fulton & Goss. The mortgage stated:

6. LIENS. Mortgagors will not create or suffer to be created any charge, lien or encumbrance upon the Mortgaged Property, or any part thereof, excepting the lien herof, without the prior written consent of Mortgagee. Mortgagors will pay promptly when due all charges for utilities or services including but not limited to electricity, gas and water. In the event Mortgagors fail to pay promptly all such charges, Mortgagee may, at its option, pay same and any amounts so paid by Mortgagee shall become immediately due and payable by Mortgagors with interest at the rate of ten per cent (10%) per annum and shall be secured by this Mortgage.

\*    \*    \*    \*    \*    \*

8. \* \* \* \* No judgment, order, or execution entered in any suit, action or proceeding, either legal or equitable, on the Note or on this Mortgage shall be enforced against the maker thereof for the purpose of obtaining satisfaction and payment thereof, the debt evidence thereby and any claim arising thereunder or under this Mortgage from other than the property by this Mortgage conveyed, the rents, issues and profits thereof, and such other and further security as may from time to time be given; provided, however, that nothing therein or herein

contained shall limit or be construed to limit or impair the enforcement against such property of the rights and remedies of the Mortgagee and its successors and assigns as owner and holder thereof under the Note, this Mortgage and all other documents collateral thereto.

The note recited:

FOR VALUE RECEIVED, the undersigned, ROGER M. HAENDIGES, promises to pay to the order of FULTON & GOSS, INC., an Ohio Corporation (Lender) ... the principal sum of Eight Hundred Ninety Thousand Dollars ($890,-000.00) ... with interest ....

     \*    \*    \*    \*    \*    \*

No judgment, order or execution entered in any suit, action or proceeding, either legal or equitable, hereon or on said mortgage shall be enforced against the maker hereof for the purpose of obtaining satisfaction and payment hereof, the debt evidence and any claim arising hereunder or under said mortgage from other than the property by said mortgage conveyed, the rents, issues and profits thereof, and such other and further security as may from time to time be given; provided, however, that nothing herein contained shall limit or be construed to limit or impair the enforcement against such property of the rights and remedies of the Lender and its successors and assigns as owner and holder hereof under this Note, said mortgage and all other documents collateral thereto.

The mortgage was recorded with the Medina County Recorder's Office on January 24, 1974. Construction of the warehouse began in March, 1974.

On September 25, 1974, Fulton & Goss assigned, by endorsement, both the note and the mortgage from Haendiges to Metropolitan. On October 3, 1974, Berks issued its commitment to issue title insurance on the mortgage assigned to Metropolitan. This commitment stated that the proposed insureds were, "Fulton & Goss, Inc., and/or Metropolitan Life Insurance Company, as their interests may appear," and further stated that Berks was committed to issue its policy "in favor of the proposed Insured".

The Metropolitan commitment, scheduled to expire on October 12, 1974 was extended in writing until December 1, 1974. On December 26, 1974, the loan was funded by Metropolitan; The Cleveland Trust mortgage was cancelled; the assignment of the Fulton & Goss mortgage from Haendiges to Metropolitan was recorded in the Medina County Recorder's Office; and Berks issued a Title Insurance Policy to Metropolitan (but did not name Fulton & Goss as an insured) which provided that Berks was subrogated to the Insured's rights and remedies. At or around this time, construction was completed.

Subsequently a number of mechanics' liens were filed with the Medina County Recorder indicating that certain companies and individuals had furnished labor and materials as subcontractors and materialmen for and during the construction of the warehouse and had not been paid. An action was then filed in the Court of Common Pleas, Medina County, Ohio by the lien holders to foreclose. Metropolitan, Fulton & Goss and Roger Haendiges were each a party in the state case.

In state court, Metropolitan moved for an order of sale of the property. The court found that the note and mortgage held by Metropolitan constituted a valid lien upon the premises and that Roger Haendiges breached the conditions of the mortgage by failing to pay installments of principal, interest and taxes, and to obtain insurance as required. Accordingly, Metropolitan had the right to advance and recover theretofore unpaid insurance premiums and real estate taxes. The court, however, restricted recovery of said sums to proceeds derived from sale of the encumbered property and not from the Haendiges individually.

The court made no decision as to priority of the mechanics' liens, but ordered the property sold. Certain mechanics' lienholders appealed this Judgment.

The Court of Appeals held that Metropolitan could only maintain priority in the

foreclosure proceeding if it had a "duty to fund" its loan commitment. As Metropolitan's commitment could only be extended in writing, and as it had granted an oral extension, the court determined that Metropolitan did not have an obligation to disburse. Accordingly, the court remanded the case to the trial court to determine the issue of priority of the various encumbrances. (Ohio App. No. 823, Ninth District, January 11, 1979.)

On remand, the trial court determined that three mechanics' liens had priority over Metropolitan's mortgage interests and, having previously ordered distribution of the proceeds of sale of the property to Metropolitan, the court ordered Metropolitan to pay the mechanics' liens. All other mechanics' liens were either previously dismissed voluntarily or dismissed with prejudice by the court for want of prosecution.

Prior to the Common Pleas Court ruling Berks obtained, by way of assignment for consideration, all rights, title and choses in action from two of the three mechanics' lien holders with priority and subsequent to the state court decision obtained the third mechanics lien. Two of these were obtained for amounts less than the stated amount of the liens. In addition, Berks settled two other mechanics' liens prior to the disposition of the state court case. Like the others, an assignment of all rights was issued to Berks from the lienholders. Berks also paid Metropolitan's attorney's fees for defense of the state court action.

Berks and Metropolitan then brought this action to recover the amount which was "required" to be paid by the priority finding of the state court and the prior settlement of two mechanics' liens, and legal expenses incurred as a result of Berks having undertaken the defense of all the mechanics' liens.

Plaintiffs' motion for summary judgment specifically relies on three assertions. First, Fulton & Goss breached the mortgage loan commitment agreement between Fulton & Goss and Metropolitan, which prohibited "the possibility of any (a) prior mechanics' liens, (b) prior materialmen's liens ...." Second, plaintiff raises the breach of the original mortgage agreement from the Haendiges to Fulton & Goss, subsequently assigned to Metropolitan, by the Haendiges in that they permitted encumbrances, charges and liens to attach to the mortgaged property. Third, plaintiff raises the breach of the Cleveland Trust agreement by Fulton & Goss and the Haendiges via the breach of the incorporated commitment agreements. Plaintiff claims to be a third-party beneficiary of this agreement.

Fulton & Goss premise its motion on a number of assertions, among which include having fulfilled all of the terms of its agreement with Metropolitan and Berks' having represented, and Fulton & Goss having relied upon the representation that the title insurance policy would insure Fulton & Goss against defects in title and, therefore, plaintiffs are estopped from asserting any claim against Fulton & Goss.

The Haendiges primarily rely upon the non-recourse provision of the agreements. Additionally these defendants raise what appears to be the doctrine of collateral estoppel.

## I.

An examination of Metropolitan's commitment reveals that that document contains a number of conditions which were required to be met before Metropolitan would "purchase the loan." Among those conditions was that a note be secured by a mortgage to the property, "free of the possibility of any (a) prior mechanics' liens, (b) prior materialmen's liens or (c) special assessments for work completed or under construction on the date of our purchase of the loan."

Fulton & Goss were signators to this agreement and, therefore, were required to provide a note and mortgage to property which was free of mechanics' liens prior to the purchase of the loan, i.e. prior to the funding of the transaction.

Ohio Revised Code § 1311.13 provides that after the filing of a mechanics' or materialmen lien affidavit the liens "are

effective from the date the first labor is performed, or the first machinery, materials, or fuel is furnished by the contractor under the original contract ...." Ohio Rev.Code Ann. § 1311.13. Such a lien "relates back to the time of the performance of the first labor and the first delivery of material, and is effective as of that date against subsequent liens arising under state law ...." *In re Taylorcraft Aviation Corp.*, 168 F.2d 808, 809 (6th Cir.1948) (citation omitted).

As mechanics' liens were attached to the property, and the lien affidavits indicate that the dates of performance were all prior to the date of purchase of the loan, Fulton & Goss breached the provision of the commitment agreement as quoted above.

Although the Medina County Court of Common Pleas correctly indicated that the commitment from Metropolitan expired on December 1, 1974, the relevance of that fact to that proceeding was for the purpose of determining the statutory priorities of the various lienholders and not the contractual relationships of the parties herein. This is not a case where the intent of the parties cannot be ascertained.

■ It is evident from the terms of the Metropolitan commitment that a writing was required in order to extend the commitment past the expiration date. It has long been recognized that a term of a contract may be waived by the subsequent acts and conduct of the parties. *The Ohio Farmers Insurance Co. v. Cochran*, 104 Ohio St. 427, 135 N.E. 537 (1922); *Hotchner v. Neon Products*, 163 F.2d 672 (6th Cir.1947). The pleadings and affidavits reveal that the parties continued to perform the terms and conditions of the commitment subsequent to the expiration date.

■ This is confirmed by letter from Metropolitan to Fulton & Goss' attorney on December 20, 1974, wherein Metropolitan stated, "[i]t is understood that this loan shall be closed in accordance with our commitment to Fulton & Goss, Inc. dated September 12, 1973 as amended ...." Conse-

quently, the contract term requiring a written extension was waived by the parties and, for purposes of determining the contractual relationship of the parties, the remaining terms and conditions were in effect when the loan was purchased.

■ Fulton & Goss' liability for breach of the commitment is, however, vitiated by reason of Berks' failure to issue title insurance to Fulton & Goss as stated in Berks' commitment dated October 3, 1974. That commitment stated that Berks would insure Metropolitan and Fulton & Goss "as their interest may appear." If Fulton & Goss could be held liable for incurring prior mechanics' liens it follows, *a fortiori* that this interest would have been insured against by the issuance of the policy as represented by Berks. Berks, who agreed to insure Fulton & Goss' interests, but then failed to do so, cannot now seek damages for breach of an insurable interest against Fulton & Goss. Accordingly, summary judgment is granted in favor of Fulton & Goss on the issue of liability for breach of the Metropolitan-Fulton & Goss commitment.

## II.

■ Plaintiffs allege in their motion that:

The liability of the Defendants, Roger and Lee Haendiges, arises by virtue of the original mortgage made to Fulton & Goss, Inc. and later assigned to Metropolitan Life Insurance Company dated January 16, 1974 at page four, paragraph six which provides, "mortgagors will not create or suffer to be created any charge, lien or encumbrance upon the mortgagee's property".

From the pleadings and affidavits presented, it cannot be said that the Haendiges did not breach this provision of the mortgage agreement. While specifically obligated to refrain from encumbering the property without written permission from the mortgagee, mechanics' liens were caused to be attached to the property.

The very same mortgage, however, also states:

*No judgment, order, or execution entered in any suit,* action or proceeding, either legal or equitable, *on the Note or on this Mortgage shall be enforced against the maker thereof for* the purpose of obtaining satisfaction and payment thereof, the debt evidenced thereby and *any claim arising thereunder or under this Mortgage from other than the property by this Mortgage conveyed, the rents, issues and profits thereof, and such other and further security as may from time to time be given; provided,* however, that nothing therein or herein contained shall limit or be construed to limit or impair the enforcement against such property of the rights and remedies of the Mortgagee and its successors and assigns as owner and holder thereof under the Note, this Mortgage and all other documents collateral thereto.

Mortgage Agreement ¶ 8 (emphasis added).

Plaintiffs would have this Court focus on the language, "for the purpose of obtaining satisfaction and payment thereof" for the proposition that the Haendiges could be held personally liable for amounts due as a result of a claim for other than the recovery of the loan. Such an interpretation would require the language emphasized above to be given no effect. This cannot be done.

The language of paragraph 8 provides that no judgment, order or execution "in any suit ... on the Note or on this Mortgage shall be enforced against the maker thereof for ... any claim arising thereunder or under this Mortgage from other than the property by this Mortgage conveyed ...." Plaintiffs' claim is essentially for the recovery of damages occasioned by the breach of the mortgage contract in that the Haendiges breached the provisions of paragraph 6. Thus the plaintiffs may recover, but only as against the property and not against the individuals.

It is also of interest to note that this same issue, i.e. the Haendiges liability for breach of a contractual provision, was impliedly considered and decided in the state court proceeding. In the first Medina County Common Pleas Court decision it was held that the Haendiges had breached their contractual obligation by failing to pay on their note and, therefore, Metropolitan was entitled to recover judgment as against the property only. The state court also found a breach of the mortgage agreement in that the Haendiges failed to pay insurance premiums and real estate taxes, and that Metropolitan had the right to advance these sums and recover the payment *as against the property only.*

It is evident that the state court found that recovery for breach of any contractual provision of the mortgage or note was restricted to a judgment against the property, and not the individuals, pursuant to the terms of the mortgage and note.

While that case was reversed and remanded upon appeal, the appellate court never addressed this holding but rather required the trial court to determine the priority of the various liens in accordance with Ohio law. Additionally, plaintiffs never appealed this aspect of the trial court's decision.

The holding of the Medina County Common Pleas Court with respect to this issue is consistent with this Court's holding, that, on the plain face of the mortgage, plaintiffs may not recover as against the Haendiges individually, and in fact lends support to this holding.

Accordingly, summary judgment is granted in favor of the Haendiges with respect to the breach of the mortgage contract.

### III.

Plaintiffs' final basis for summary judgment is that the defendants breached the loan agreement with Cleveland Trust, wherein Roger Haendiges promised to comply with the "covenants and terms and conditions" of the commitments from Metropolitan and Fulton & Goss, and Fulton & Goss promised to comply with the commitment from Metropolitan.

■ Plaintiffs seek recovery on this agreement as third-party beneficiaries. A third-party beneficiary is one for whose benefit a promise in a contract has been made but who is not a party to that contract. *Chitlik v. Allstate Ins. Co.*, 34 Ohio App.2d 193, 299 N.E.2d 295 (8th Dist.1973). The third-party cannot be an incidental or indirect beneficiary. *Id.*

The commitment from Metropolitan specifically required that interim financing be arranged, and that any such interim financing agreement be obtained "subject to all the terms, including the satisfaction of each of the conditions of this commitment". [Paragraph 18]. Additionally, "[t]he terms of the construction loan documents shall be such as to meet all the requirements in this Commitment . . . ." [Paragraph 19]. Paragraph 20 states that unless interim financing is found within 30 days, and a letter is received from a bank to the effect that it will furnish funds so that the structure can be completed in accordance with the terms and conditions of the commitment, the commitment could be terminated.

■ The practice in this area of real estate financing and the provisions of both Metropolitan's commitment and the Cleveland Trust loan agreement indicate that Metropolitan was more than an incidental beneficiary to the Cleveland Trust agreement, and actually required such an agreement as a condition for providing long-term financing. Without the Cleveland Trust agreement, Metropolitan would not have been in a position to fulfill the desired transaction. Accordingly, this Court holds that plaintiffs' are third-party beneficiaries of the Cleveland Trust agreement.

As the commitments from Fulton & Goss and Metropolitan were attached to the Cleveland Trust agreement, incorporated by reference and expressly required to be complied with, the defendants breached the Cleveland Trust agreement by way of the attachment of prior mechanics' liens.

Fulton & Goss, again, cannot be held liable for the breach due to Berks' failure to insure Fulton & Goss, as held above, and summary judgment is granted in favor of Fulton & Goss on this issue.

As Lee Haendiges was not a signator to the Cleveland Trust agreement, summary judgment is granted in favor of Lee Haendiges on this issue.

Defendant Roger Haendiges, however, was signator to the Cleveland Trust agreement and breached said agreement, via the prohibition against prior mechanics' liens in the Metropolitan commitment. As no nonrecourse provision appears in the Metropolitan commitment, or in the Cleveland Trust agreement, which would require that recovery for breach of either of these two agreements be restricted to the property, plaintiffs' motion for summary judgment as against Roger Haendiges is granted.

IV.

Plaintiffs have prayed for judgment in the amount of one hundred seventeen thousand nine hundred sixty dollars and forty-five cents ($117,960.45), that sum representing the actual value of three prior mechanics' liens which were judicially determined to be paid by Metropolitan; the amount paid to settle two prior mechanics' liens prior to the state court judgment; and attorney's fees expended on behalf of Metropolitan's defense in the state court. Plaintiff also requests costs and interest.

Plaintiffs seek to recover the full amount of the three prior mechanics' liens addressed by the state court, totaling twelve thousand seventy-seven dollars and twenty-seven cents ($12,077.27). It is apparent that two of these liens were "assigned" for consideration to Berks prior to the state court judgment, and that court was without knowledge of the assignment. A third lien was "assigned" subsequent to the state court's determination. Two of these liens were assigned for less than actual value. With regard to these three liens, and recognizing that Berks had a contractual obligation to Metropolitan to settle or pay on these claims, it is evident that Berks was actually settling these claims on behalf of Metropolitan. Accordingly, Berks is entitled to recover only the out-of-pocket

amount paid in settling these three prior mechanics' liens (seven thousand nine hundred thirty-eight dollars and sixty-three cents ($7,938.63)) and the two prior mechanic's liens which were settled out of court (eighty-eight thousand dollars ($88,000)) for a total of ninety-five thousand nine hundred thirty-eight dollars and sixty-three cents ($95,938.63).

Additionally, the pleadings and affidavits indicate that Berks expended seventeen thousand eight hundred eighty-three dollars and eighteen cents ($17,883.18) in attorney's fees on behalf of Metropolitan in the state court case. As a general rule, attorney's fees incurred in prosecuting or defending a prior suit against a third-party where the suit is a result of the breach of contract by a defendant are recoverable as against that defendant. *See Wilshire Oil Company of Texas v. L.E. Riffe*, 409 F.2d 1277, 1285 (10th Cir.1969); *Vaughan v. N.J. Atkinson*, 291 F.2d 813, 815 (4th Cir. 1961); *Artvale, Inc. v. Rugby Fabrics Corp.*, 232 F.Supp. 814, 826 (S.D.N.Y.1964), *aff'd* 363 F.2d 1002 (2nd Cir.1966).

In the instant case, had the defendants not breached the contracts, plaintiffs would not have had to defend a suit in state court. Roger Haendiges, therefore, is liable to the plaintiffs for reasonable attorney's fees incurred in the state court action, in the amount of seventeen thousand eight hundred eighty-three dollars and eighteen cents ($17,883.18).

In sum, plaintiffs' motion for summary judgment as against Roger Haendiges is granted. Defendants Fulton & Goss and Lee Haendiges' motions for summary judgment are granted. Judgment in the amount of one hundred thirteen thousand eight hundred twenty-one dollars and eighty-one cents ($113,821.81) plus costs and interest shall be entered against defendant Roger M. Haendiges.

All other motions are moot.

This action is terminated.

IT IS SO ORDERED.